1  Khachik Akhkashian. Esq. "EUD" 435829
   Law Offices of Khachik Akhkashian
2  Montrose Shopping Park
   2418 Honolulu Avenue, Suite G
3  Montrose, California 91020
   Tel.: (818) 249-2220; Fax: (818) 249-2297
4  Cnj nruj kcprcy B {cj qq(eqo

5  Attorney for Debtor and Plaintiffs

6

7

8                    UNITED STATES BANKRUPTCY COURT

9        IN THE CENTRAL DISTRICT OF CALIFORNIA - SANTA BARBARA DISTRICT

10 In re: SHERR, LLC, RASBE, INC, and    ) CASE NO. __9:19-bk-11123-MB__
   EMMET, INC, and their sole Director and )
11 President, RONE OREN                   ) CHAPTER 7
                                          )
12                Debtors                 ) ADV. Pro. _____
                                          )
13 SHERR, LLC, a Delaware Limited Liability ) VERIFIED COMPLAINT FOR:
   Company, RASBE, INC. a Delaware        )
14 Corporation, EMMET, INC. a            )
   Delaware Corporation, and RONE OREN    )
15 the Sole Director and President of SHERR, ) 1. VIOLATIONS OF THE RACKETEER
   LLC, RASBE, INC. AND EMMET, INC.      )    INFLUENCE AND CORRUPT
16                                        )    ORGANIZATIONS ACT
                  Plaintiffs              ) 2. OBSTRUCTION OF JUSTICE UNDER
17                                        )    TITLE 42 USC 1985(2)
   ELY DROMY, DAVID DROMY,               ) 3. CIVIL CONSPIRACY UNDER
18 SILVER LAKE PARK, LLC.                )    TITLE 42 U.S.C 1985(3)
   JOSEPH GUGLIELMO, VC VISIONS,         ) 4. VIOLATIONS OF CALIFORNIA BUSINESS
19 LLC, a California Limited Liability Com. )    AND PROFESSIONS CODE 17200
   and DOES 1-100, inclusive             ) 5. DECLARATORY RELIEF
20                                        ) 6. NEGLIGENCE
                  Defendants             )
21 _____    )

22              **FEDERAL BANKRUPTCY COURT JURISDICTION**

23     1. Plaintiffs, as the pleaders do consent to entry of final orders or judgment by the bankruptcy

   court (FRBP § 7008), and this action is brought under FRBP § 7001(1), to recover money and

   property, FRBP § 7001(6) a proceeding to determine the discharge of an alleged debt, FRBP 7001(7)

   a proceeding to obtain an injunction or other equitable relief,. FRBP § 7001 (9) a proceeding to

   obtain a declaratory judgment relating to any of the foregoing and FRBP § 7001 (10) a proceeding to

   determine a claim or cause of action removed under 28 U.S.C. § 1452.

**VENUE**

2. Venue is proper under 28 USC § 1409(a) because the debtor corporate entities filed their Chapter 7 proceeding in the Santa Barbara Division of the United States District Court for the Central District of California, and all of events described in the Adversary Proceeding took place in Los Angeles County California, in the Jurisdiction of the United States District Court for the Central District of California, and the primary place of business of the debtor Plaintiff corporations is in Malibu, California and the primary residence of the sole director and officer of the debtor plaintiff corporations is in Malibu, California.

**NATURE OF THE ACTION**

3. Plaintiffs on behalf of their creditors, investors and shareholders, complain against all Defendants for the claims alleged as a result of a conspiracy to place the onus of responsibility for the loss of a portfolio of hotels worth in excess of 102 million after escrow closed.

4. Silver Lake Park, LLC (SLP) was a third party investor, introduced by Oren to the buyer VCV to purchase a Portfolio of hotel properties, nine in Georgia and eights in five other states, and SLP invested 13 million in a buyer for a 50% interest in the LLC that owned the portfolio of 17 hotel properties and a $100,000.00 monthly payment until the 13 million was repaid. Buyer mislead Oren during escrow claiming that buyer will be putting $13 million dollars cash and equity into the deal to purchase the portfolio of hotel properties all over the US.

5. After escrow closed, and after two monthly payments by the Seller stopped, Seller took full responsibility for returning the Dromys' $13,000,000.00, SLP refused and filed suit against the seller, and eventually the buyer in a SAC, and the escrow company in a separate action. In complaint and the FAC, SLP noted that Oren and the entities acted properly. While litigating the FAC. SLP, through its managing member, Ely Dormy, then demanded that Oren pay his attorney fees and testify against the escrow company. Oren refused. SLP then filed a SAC naming Oren and the entities as Defendants for fraud through breach of an oral agreement. During suit, SLP ultimately settled with the buyer and seller. But Ely Dormy threatened Oren that if he did not return the funds that were paid from escrow to the debtor Sherr, Rasbe, Emmet corporations of which Oren is the sole director and officer, he, Eli Dromy would file an action with the FBI and the local police. Oren did not capitate to

1  the extortion and blackmail and SLP filed its second amended complaint against Oren, Sherr, Rasbe

2  and Emmet in the Superior Court of California. During suit, Ely Dormy continually physically

3  threatened Oren with physical violence and with death if Oren,  on behalf of Sherr, Rasbe and Emmet

4  did not pay millions of dollars to SLP, then SLP would file a lawsuit against them.

5      6. The seller agreed to settlement of the claims Oren, Sherr, Rasbe and Emmet asserted

6  against the Seller. Oren was then informed the buyer asserted Oren had previously signed an

7  Indemnity agreement to indemnify the buyer from any claims as a result of the purchase and sale of

8  the portfolio of 17 hotels. Oren on behalf of himself and Sherr, Rasbe and Emmet alleged the

9  indemnity agreement is a forgery. Oren, on behalf of Sherr, Rasbe and Emmet allege a massive

10  conspiracy was launched against them by Ely Dormy and the buyer to take the onus of responsibility

11  off their shoulders and unlawfully place it on the shoulders of Oren and the corporate entities and

12  thus they file their Adversary Proceeding Complaint against all defendants for RICO Violations,

13  Obstruction of Justice, Civil Rights Conspiracy, Violations of California's B&P § 17200 and seek

14  Declaratory Relief.

15              **COMPULSORY JOINDER OF RONE OREN**

16      7. Under the rules of Compulsory Joinder for a just determination (FRBP 7019 incorporating

17  FRCP § 18) Rone Oren must join in the Adversary Proceeding as a Plaintiff because (A) he is the

18  sole director and sole officer and majority shareholder of the debtor Plaintiff Sherr, Rasbe and

19  Emmet, and (B) SLP and the Dromy's allege that Oren is the alter ego of the debtor Plaintiff Sherr,

20  Rasbe and, Emmet, ad (C) induced the funds to be released from escrow to these entities, and (D)

21  induced the entities to transfer the funds to him, and (E) the corporate entities can only make

22  decisions through its director and officer, and his joinder will not deprive the court of subject-matter

23  jurisdiction (FRVP 19(a)(1), and must be joined as a party because in his absence, the court cannot

24  accord complete relief among existing parties (FRCP § 19(a)(1)(A), and under FRCP § 19(a)(1)(B),

25  The interest of Rone Oren interest and the corporate entities are identical as they relate to his claims

26  against the Defendants and as they relate to the subject of the action and are so situated that disposing

27  of the action in the absence of Rone Oren or the corporate entities will, as a practical matter impair or

28  impede his ability to protect the interest of the corporate entities (FRCP § 19(a)(1)(B)(i) or leave the

1   corporate entities subject to a substantial risk of incurring double, multiple, or otherwise inconsistent

2   obligations because of the interest. (FRCP § 19(a)(1)(B)(ii))

3   **PARTIES**

4       8. Debtor and Plaintiff Sherr, LLC ("Sherr" and/or "Plaintiff") is, and at all times mentioned

5   in this Adversary Proceeding Complaint, was a Delaware limited liability company and its principal

6   place of business in Malibu Cal., and Rone Oren is its sole director, sole officer and majority

7   shareholder.

8       9. Debtor and Plaintiff Rasbe, Inc, ("Rasbe" and/or "Plaintiff") is, and at all times mentioned

9   in this Adversary Proceeding Complaint, was a Delaware Corporation and its principal place of

10   business in Malibu California, and Rone Oren is its sole director, sole officer and majority

11   shareholder.

12       10. Emmet, Inc. ("Emmet and/or "Plaintiff") is, and at all times mentioned in this Adversary

13   Proceeding Complaint, was a Delaware Corporation and its principal place of business in in Malibu

14   California, and Rone Oren is its sole director, sole officer and majority shareholder.

15       11. Rone Oren ("Oren" and/or "Plaintiff") is, and at all times mentioned in this Adversary

16   Proceeding Complaint, was a California resident, residing in Los Angeles County in the City of

17   Malibu, California, and he is the sole Director and sole officer of Sherr, Rasbe and Emmet.

18       12. Silver Lake Park, LLC ("SLP" or "Defendant") is, and at all times mentioned in this

19   Adversary Proceeding Complaint was a California limited liability company, doing business in, and

20   subject to the jurisdiction of the State of California, and the County of Los Angeles.

21       13. Ely Dromy ("Ely Dromy" or "Defendant") is, and at all times mentioned in this Adversary

22   Proceeding Complaint was a resident of Los Angeles County, and subject to the jurisdiction of the

23   State of California, and the County of Los Angeles, and is one of the principals of Silver Lake Park,

24   LLC., and, on behalf of Silver Lake Park and his son, Defendant David Dromy, is alleged to have

25   entered a conspiracy as more properly alleged below, against Oren and the entities of which he is the

26   director and principal, Sherr, Rasbe and Emmet.

27       14. David Dromy ("David Dromy" or "Defendant") is, and at all times mentioned in this

28   Amended Complaint was a resident of Los Angeles County, and subject to the jurisdiction of the

1    State of California, and the County of Los Angeles and also one of the principals of Silver Lake Park,

2    LLC, and,  on behalf of Silver Lake Park and his father, Defendant Ely Dromy, is alleged to have

3    entered into a conspiracy as more properly alleged below, against Oren and the entities of which he is

4    the director and principal, Sherr, Rasbe and Emmet.

5         15. Joseph Guglielmo, ("Guglielmo" or "Defendant Guglielmo") is, and at all times

6    mentioned in this Adversary Proceeding Complaint was a resident of Los Angeles County, and

7    subject to the jurisdiction of the State of California, and the County of Los Angeles and also one of

8    the principals of Visions, VC, LLC, and, on behalf of Visions VC, LLC, and Ely Dromy, David

9    Dromy and Silver Lake Park, is alleged to have entered a conspiracy as more properly alleged below,

10   against Oren and the entities of which he is the director and principal, Sherr, Rasbe and Emmet.

11        16. VC Visions, LLC ("VCV") is, and at all times mentioned in this Adversary Proceeding

12   Complaintwas, a Delaware limited liability company, doing business in, and subject to the

13   jurisdiction of the State of California, and the County of Los Angeles, and on behalf of Guglielmo,

14   and Ely Dromy, David Dromy and Silver Lake Park, is alleged to have entered into a conspiracy as

15   more properly alleged below, against Oren and the entities of which he is the director and principal,

16   Sherr, Rasbeand Emmet.

17        17. At this time, Sherr, Rasbe, Emmet and Oren ("Plaintiffs") are ignorant of the true names

18   and capacities of the Defendants sued herein as DOES 1 through 100, inclusive, and therefore sues

19   these Defendants by such fictitious names. DOES 1 through 100 inclusive are all persons claiming

20   any legal or equitable interest in the property that is the subject of this action or whose joiner is

21   required to resolve the Plaintiffs claims herein.  Each of the defendants designated herein as a

22   fictitiously named Defendants 1 - 100 is, in some manner, responsible for the events and happenings

23   referred to and are liable to the Plaintiffs for monetary damages.

24        18.  Plaintiffs will amend this Verified Adversary Proceeding Complaint to allege the true

25   names and capacities of Does 1- 100 when ascertained. At all times mentioned herein, each of the

26   Defendants and DOE Defendants , whether individual, corporation, partnership, limited liability

27   company, joint venture, unincorporated association or other business entity of unknown form, and,

28   or, whether named or sued by fictitious name, was the agent, servant, employee and, or, officer,

director or partner of each of the other Defendants and in doing the things herein alleged, each of the

Defendants were acting within the course and scope of such agency, employment or capacity, with

the permission and consent of each of the other Defendants, unless otherwise stated herein. For the

purpose of convenience, all references to named Defendants herein, shall include the DOE

Defendants, unless otherwise stated.

19. Each of the Defendants, whether individual, corporate, partnership, joint venture, limited

liability company, unincorporated association, or other business entity of unknown form, and/or

whether named or sued by fictitious name other than DOES 1- 100, is responsible in some manner

for the damages suffered by Plaintiffs; and, Plaintiffs will seek leave of this Court to amend this

Verified Adversary Proceeding Complaint to add additional causes of action and appropriate

charging allegations, including additional claims against Guglielmo and VCV  when discovery

reveals the true nature of the actions of all Defendants, and each of them.

### **GENERAL ALLEGATIONS**

20. In or ab0ut October 2014, Real Estate Broker Mark Mimms ("Mimms") was contacted by

a broker friend of his working at Sperry Van Ness informing him that he had a broker from Northern

California that had a client that had some hotels that they wanted to sell, and he wanted to know if

Mimms had a buyer for the hotels. Mimms reviewed some basic information regarding the hotels,

and contacted one of his best clients, Guglielmo  with whom he had previously brokered business

transactions. Guglielmo expressed interest in purchasing the hotels and Mimms contacted the seller,

First Capital Real Estate Investment, LLC ("First Capital"), and its managing

member, Suneet Singal through its broker, Susan McShannock ("McShannock") both of which he

had not previously met and of whom he had no prior knowledge.

21. First Capital through McShannock began sending financial documents on the hotel

properties, and Guglielmo through Mimms moved forward with the transaction with a Letter of

Intent ("LOI").

22. The seller, First Capital, owned eight hotels in 5 states and had a contract to purchase 9

hotel properties in Georgia; these nine hotels were in escrow and required a new loan to facilitate the

closing of the escrow. Guglielmo put together a deal in which First Capital as the seller, signed a

Purchase and Sale agreement for a company of which Guglielmo was the managing member of VCV as buyer, to purchase the seller's (First Capital) Portfolio for 100.1 million with a 30 million cash deposit from one of VCV's equity investors from Beverly Hills.

23. Approximately one month after Guglielmo and Singal constructed the deal, the equity investor backed out and VCV had to obtain a new equity investor. Guglielmo then met with Rone Oren ("Oren") and Oren was tasked to be a "finder" of a new equity investor. Oren met with Ely Dromy of Dromy International Investment Corporation ("DIICO");  Ely Dromy is the alter ego of DIICO.

24. Ely Dromy consented to be the new equity investor for VCV to purchase First Capital's portfolio of 17 hotel properties.

25. Oren's status as a "finder" modified to an unregulated facilitator associated with the purchase and sale transaction between First Capital as seller, and Guglielmo, VCV, as buyer and Ely Dromy and DIICO as investor.

26. On January 28, 2015, Ely Dromy sent Oren an e-mail attaching a first LOI in which DIICO or its assignee, sought to acquire the portfolio of nine hotels located in Augusta, GA for $38,500,000.00 with 45 days to complete all necessary due diligence including title, environmental, property condition.

27. Guglielmo represented to Oren, and it was noted that First Capital had an additional eight hotel properties in five different states which First Capital also wanted to sell.

28. On the same day that DIICO sent its first LOI to Oren for the nine Georgia hotel properties, Oren communicated to Dromy that the buyer Guglielmo had additional eight hotel properties owned by First Capital presented on an excel spread sheet Oren sent to Ely Dromy.

29. On January 28, 2015, the same day that Ely Dromy had DIICO send Oren the first LOI for the nine Georgia hotel properties, Ely Dromy had DIICO send Oren a second LOI in which DIICO modified its first LOI and now sought to acquire the portfolio assets as mentioned in the excel Oren sent Ely Dromy earlier in the day.

30. The second LOI DIICO sent to Oren expressed that DIICO or its assignee, would:

///

     (A) purchase the nine Georgia hotel properties together with the eight other hotel properties in five other different states for $102,000,000.00,

     (B) with a $11,000,000.00 down payment required for;

     (C) 50% ownership;

     (D) that all properties are NNN leases and Wyndham owned;

     (E) that rent is guaranteed from operator for 20 years with 2.5% yearly rent increases;

     (F) that currently there is about $4,000,000.00 of net income after debt service & 86 units in California which will be completed with funds from the acquisition and will be free and clear;

     (G) Oren was to receive a $250,000.00 commission;

     (H) That "we" will have a 50/50 partnership and split all income and expenses according to our ownership percentage;

     (I) Ely Dromy or DIICO or its assignee would have 100% of the tax benefits from all assets;

     (J) 45 days to complete all necessary due diligence including title, environmental, property condition etc.

     (K) Closing to occur 60 days from when escrow is opened, with one 30-day extension

     31. Although the LOI expressed that "we" will have a 50/50 partnership, this language did not signify that Oren would be a 50% partner with Ely Dromy or DIICO. Rather, the "we" spoken about in the LOI was meant to ensure that DIICO or its assignee would own no less than 50% of the portfolio of 17 hotels, and the other 50% would be owned by the buyer, VCV, in whom Oren had an association as the facilitator of the purchase and sale agreement between the seller First Capital and buyer, VCV.

     32.. While Oren does have an active real estate brokers license in California, at no time during the transaction, from the initial meeting Oren had with Guglielmo, up through the January 28, 2015 LOIs and up through the opening and closing of escrow, Oren's real estate broker's license was never employed, and Oren was never employed as a real estate agent or a real estate broker or any broker of any kind. In fact, Oren never signed a broker agreement with Ely Dormy or with DIICO or its assignee. Oren did not sign a broker agreement with First Capital or with VCV. First Capital had its broker, McShannok. VCV had its broker, Mimms. Ely Dormy is a broker and he and DIICO had

several attorneys with whom they regularly communicated on their real estate purchases. The Oren entities that received the finder's fee for Oren's facilitation had no California real estate license and the hotel properties were outside of the state of California.

33. Oren gave Guglielmo DIICO's LOI and thereafter, VCV through Guglielmo modified the purchase and sale agreement which required VCV to provide a $13 million cash down payment and First Capital was to carry the remaining $89.5 million balance until they could finance the entire portfolio, and Dromy was asked to provide proof of funds to qualify him to invest in the deal.

34. Oren's role again modified and he was as facilitator, shuttling the communication between VCV and Ely Dromy and DIICO, in which DIICO assigned its role to another Limited Liability Company Ely Dromy created, Silver Lake Park, LLC ("SLP"), and SLP stepped into the shoes of DIICO and became the investor that DIICO was in the two DIICO LOIs.

35.Throughout February and March 2015, Oren shuttled back and forth between Ely Dromy's demands and the modifications of Guglielmo, tasked with presenting the respective positions and requirements of the respective counterparts, and attempting to facilitate a consummation of the transaction between the buyer, VCV and its investor, SLP, and the seller First Capital. Oren was never asked by anyone, in writing or otherwise, to invest his own money or show proof of funds, except. when escrow was closing and short $500,000.00, the Dromy's asked Oren to place into escrow the short $500,000.00 and Sherr placed into escrow the $500,00.00 requested by the Dromy's which they returned to Sheer after escrow closed.

36. Oren provided Ely Dromy and SLP with every document he was given by VCV, and Oren also communicated to Guglielmo all questions and inquires made by the Dromys and SLP. Although Oren was not a broker for the seller or the buyer or SLP, nevertheless, he disclosed to all parties the entirety of what he was given to all parties.

37. The result of Oren's shuttling the demands of each respective party was that the seller and buyer modified the basic structure of the transaction and the portfolio of the 17 hotel properties would be still owned and held by an LLC managed by First Capital, and in which:

A. The seller, First Capital would retain a 25% interest in the LLC and portfolio of 17hotel properties;

B. The buyer VCV would be given a 12.5% interest in the LLC and the portfolio of 17 hotel properties;

C. For Oren's role as a facilitator, one of the entities of which he was the sole director and officer, Sherr, Inc. would be given a 12.5% interest in the LLC and portfolio of 17 hotel properties;

D. SLP would be given a 50% interest in the LLC and portfolio of 17 hotel properties, the same 50% interest that Ely Dromy placed in his LOI dated January 28, 2015 plus a payment of $100,000.00 per month until his $13,000,000.00 was paid in full, even if the 13 million was fully paid in a refinance nine months to two years.

38. The down payment for the transaction, however, increased by 2 million to 13 million requiring an additional 2 million from the investor, DIICO.

39. Oren informed the Dromys not to proceed with the transaction as the terms had a material change with the addition of the 2 million dollars down payment.

40. The Dromys were eager to stay in the deal and represented that the hotel properties and the deal were worth 130 million and they informed Oren that they still wanted to proceed with the transaction notwithstanding the increase of the down payment by 2 million dollars, funded from the personal account of Ely Dromy and his spouse.

41. While the 13 million provided was being placed into escrow, First Capital as the seller, and VCV as the buyer signed an agreement on March 31, 2015, which incorporated the basic business stricture outlined in the above paragraph 37 A-D, inclusive, and this March 31, 2015 agreement was also signed by Sherr, Inc., through Oren, to memorialize that Sherr, Inc. was to receive a 12.5 % interest for the efforts of Oren in helping to facilitate the consummation of the purchase and sale of the respective interests in the portfolio of 17 hotel properties.

42. Oren delivered a copy of the March 31, 2015 agreement to the Dromys prior to escrow closing. After escrow closed. the Dromys informed Oren they could not find the March 31, 2015 agreement Oren had personally delivered to them and Oren then sent the Dromys the March 31, 2015 agreement by e-mail transmission which the Dromy;s admitted receiving.

43. Ely Dromy is a sophisticated real estate investor and through various entities and LLCs, he has bought and sold numerous hotel and apartment properties for decades in excess of hundreds of

1  millions of dollars. Ely Dromy and David Dromy know what due diligence is required in a real estate

2  purchase and sale agreement. The Dromy's and DIICO had attorneys and experts with whom they

3  consulted on their real estate transactions and had knowledge of the due diligence necessary for them

4  to make an informed, knowing and intelligent decision whether to proceed or not. The Dromy=s

5  admitted to receiving thousands of pages of due diligence documents for the purchase of the portfolio

6  of the 17 hotel properties. The Dromys also admitted that after review of these thousands of pages of

7  due diligence, they concluded the investment in the hotel properties was a sound deal.

8       44. Mimms, a licensed broker for over thirty years in hotel transactions in excess on a billion

9  dollars noted that in the commercial real estate business, the buyers legitimately and lawfully put in

10  some kind of a fee or commission in the transaction for management fees and add it to the transaction

11  so that they get paid, at close of escrow additional monies to take care of capital expenditures and

12  doing so is not out of the ordinary.

13       45. Thus, the seller, First Capital and the buyer, VCV, incorporated into the March 31, 2015

14  agreement that from the 13 million deposited into escrow, certain funds would be disbursed to the

15  seller, First Capital, the buyer, VCV, and to Sheer, Emmet and Rasbe for Oren=s facilitation efforts.

16       46. Escrow was to close on April 22, 2015 and closing of a transaction is when one has a

17  purchase agreement that is signed by buyer and seller with an escrow instruction to close on a certain

18  date.

19       47. The escrow instructions for the sale of the portfolio of the 17 hotel properties being sold

20  by First Capital to VCV were the March 31, 2015 agreement.

21       48. SLP became the successor to DIICO in this transaction for the purchase of the portfolio of

22  17 hotel properties. Pursuant to the March 31, 2015 agreement of which the Dromy's and SLP were

23  given a copy and never objected, following the authorizations of the Seller and Buyer, Stewart Title

24  Escrow released to the Oren entaties Sherr LLC, Emmet Inc and Rasbe Inc approximately $4 million

25  dollars. Oren did not have authority or control over the escrow or the escrow funds.

26       49. During escrow and prior to the close of escrow, the seller, First Capital and the buyer,

27  VCV, sent written authorizations for escrow to make a distribution of funds placed into escrow to

28  Sherr, Rasbe and Emmet in the amount of approximately 4 million, but Oren at the Dromy's request

1  had placed into escrow the short fall of $500,00.00, which the Dromy's returned to Sherr sometime

2  after close of escrow.

3        50. Subsequent to the close of escrow, title to the interests of approximately 8 hotels was

4  obtained but the nine Georgia hotels required refinancing as detailed in the March 31, 2015

5  agreement. The lender, as do all lenders for the purchase of commercial real estate, required a

6  personal guarantee on the loan by Ely and Judy Dromy (husband and wife) as SLP had a 50% interest

7  in the LLC in which the 9 Georgia hotels were to be held and the Dromy's were the alter egos of

8  SLP. Ely Dromy is familiar with these lender requirements based on his years of experience as a real

9  estate investor. Ely Dromy refused to provide a personal guarantee because he did not want his

10 personal name to officially appear on any document connected with this transaction to facilitate the

11 refinance of the nine Georgia hotel properties. As a proximate cause of the failure of Ely Dromy to

12 provide his personal guarantee, the lender facilitating the refinance refused to issue a new loan to

13 facilitate the closing of the hotels that were in escrow.

14        51. After the close of escrow, Ely Dromy received two monthly payments of $100,000.,00. .

15 When the refinance failed, the monthly net proceeds from the portfolio of 17 hotel properties ceased,

16 and the monthly $100,000.00 payment to Ely Dromy and SLP ceased. First Capital, through Suneet

17 Singal. had, however, previously given Ely Dromy a guarantee of receiving the $100,00000 per

18 month. Then, Suneet Singal represented that he could not fulfill the guarantee as he did not have

19 enough income from the hotel portfolio. After the close of escrow. First Capital and Suneet Singal

20 realized that Ely Dromy would absolutely not give a personal guarantee and  Singal was left with no

21 choice but to obtain the loans on his own, but his efforts were not successful.  Ely Dromy demanded

22 a return of his 13 million from the seller. The seller First Capital took full responsibility for returning

23 the Dromys' $13,000,000.00 investment and offered the Dromys a restructuring whereby the Dromys

24 would receive $6,500,000.00 immediately, and a $6,500,000.00 note against the Portfolio, to be

25 repaid within 6 months. The Dromys refused. The Dromys frustrated the numerous opportunities to

26 restructure the deal and otherwise mitigate problems that would have ensured a successful transaction

27 for all parties. The Dromys have turned what could have been a successful business transaction into a

28 ///

1  dispute, and initiated litigation. SLP and the Dromys failed to mitigate their alleged loses.

2  Subsequently, SLP named the buyer as a Defendant in a SAC.

3       52. When Oren world not capitulate to Ely Dromys demand that he pay their attorney's fees

4  and testify against the escrow company, SLP named Oren and Sherr, Rasbe and Emmet as

5  Defendants in in a SAC erroneously claiming, among other preposterous allegations, that Oren was

6  required to place 13 million of Oren's own money into escrow and Oren breached his oral agreement

7  in this regard and defrauded the Dromys and SLP. The Dromys fabricated this artificial theory fiction

8  as an extension of their prior attempts at blackmail and extortion aimed at Oren.

9       53. During suit, Ely Dromy, in spontaneous rash sudden statements, uttered to Oren a

10 continuing series of the death threat that Oren initially reported and documented to the Los

11 Angeles County Sheriff's Department and letters between Oren's former attorney, Lee Sacks and

12 Dromys attorney. In the initial response to Lee Sachs' letter, Dromy's attorney did not deny the death

13 threat Ely Dromy made to Oren, he only noted that Ely Dromy would leave Oren alone.

14      54. Ely Dromy did not do so, and the pattern of death threats continued, unabated from early

15 2016 up through February 2018, and included,

16      A Ely Dromys' phone call Oren approximately 1:43- p.m. on October13, 2016 stating,  "You

17 made a deal with the devil, if you don't give me the money, I will kill you!" Oren called the Los Hills

18 Sheriff's Department, a sub-division of the Los Angeles County Sheriff's Department.

19      B. A death threat during recess in a deposition of Ely Dromy in which he threatenedOren that

20 some crazy things will happen to him;

21      C. A death threat in the parking area after Oren came out of mediation about a year and half

22 ago which is documented by a letter to Dromys attorneys;

23      D. During another deposition of Ely Dromy in February 2018 where during recess Ely Dromy

24 told Oren again spontaneously. that "he is the devil and Oren made a deal with the devil and that he is

25 going to kill Oren" which was stated in the presence of Oren's attorney, Lee Sacks, Joe Guglielmo's

26 attorney Joel Shackelford, and the court reporter. In his deposition, Lee Sacks confirmed the death

27 threat made by Ely Dromy to Oren. Ely Dromy then attempted to obtain the personal address of Oren

28 and the name and address of the schools of Oren's children.

55. Oren was and is frightened, intimidated and the threats were intended to interfere with his rights to testify truthfully and present evidence that will exonerate the corporate entities, Sherr, Rasbe and Emmet of which he is the sole director, sole officer and sole shareholder.

56. Oren and the corporate entities did nothing to precipitate the failure and collapse of the transaction relative to the interest the respective parties had in the portfolio of 17 hotel properties. In fact, the failure is proximately related to the refinancing failure proximately caused by Ely Dromy's ultimate refusal to provide his personal guarantee to the lender who had tentatively agreed to the refinancing on condition of receiving the personal guarantee of the principals owing the entities who had respective interests in the portfolio of the 17 hotel properties.

57. Ely Dromy represented that he was OK with the fees that the Oren entities received as long as he, Ely Dromy, was receiving his $100,000.00 monthly payment. The fees the Oren entities received were not conditioned on anything that occurred after the close of escrow. Although the Oren entities received consideration from the seller First Capital and the buyer, VCV, which was 4% of the purchase price for Oren's efforts in helping to facilitate the consummation of the purchase and sale of the portfolio of 17 hotel properties, neither Oren nor the entities did anything to facilitate the collapse of the transaction. The collapse of the transaction was facilitated by the refusal of Ely Dromy to simply comply with standard refinancing requirements of providing his personal guarantee and, or, the seller's obligations to pay to Ely Dromy the $100,000.00 per month incident to the seller's guarantee to Ely Dromy. Oren and the corporate entities allege that  Ely Dromy eluded his name from appearing on any documents connected with the transaction  and  Ely Dromy hid his personal financial information in some unrevealed charade.  The Dromys could have demanded that their name appear on the deal documents or asked to modify their status from investor to a buyer, or asked for any changes they wished, and if ntheir requests or demands were not accepted, they could have stopped transferring money to escrow at anytime and stopped the deal. The Dromys, however, elected to proceed. even after the Dromys thought that there was a problem with the deal which Plaintiff's allege may have been why Ely Dromy refused to provide his personal guarantee. Nevertheless, Ely Dromy still elected to stay in the deal and continued to transfer millions of dollars to escrow/

Adversary Complaint by Plaintiffs Sherr, Rasbe, Emmet and Rone Oren against all named Defendants

58. Defendants SLP and the Dromys has admitted that:

A. They never executed any written agreement with Oren or Sheer, LLC with respect to their investment in the Hotel Entities or the Georgia hotel properties;

B. Oren nor Sherr, did not agree in writing to pay $6,600,000.00 for the 12.5% interestin the Hotel Entities or the Georgia Hotel Properties;

C. Neither Oren nor Sherr directed them in writing to pay $13,000,000.00 to First Capital;

D. Oren and Sherr did not agree in any writing to ensure that the March 31, 2015 Agreement was completely consistent with the terms of an alleged oral agreement that SLP and the Dromys allege they had with Oren or Sherr;

E. They never objected in writing to Oren or to Sherr about the March 31, 2015 agreement;

F. They paid all the funds through escrow to First Capital required to be paid under the March 31, 2105 agreement and First Capital was aware that they paid all the funds to First Capital required to be paid under the March 31, 2105 agreement;

G. The March 31, 2015 agreement does not require Oren or Sherr to pay  $6,500,000.00 to First Capital and assume any pro-rata share of any non-recourse indebtedness owed by the Hotel Entities or the Georgia Hotel Properties;

H. That Dromy never asked Oren or Sherr, to put in writing that Oren and Sherr, were going to contribute $13,000,000.00 in connection with the transaction;

I. It is unclear from the fabricated oral agreement exactly how much money the Dromys allege Oren was supposed to have invested in the deal pursuant to the alleged oral contract; it is equally unclear how much ownership interest Oren was supposed to receive in exchange. These amounts are unclear because the Dromys have continually uttered differing amounts ranging from $6,500,000.00 to $13,000,000.00 and ownership interests ranging from 12.5% to 50%.

59. Pursuant to their Chapter 7 proceedings, Sherr, Rasbe and Emmet, will file a Notice of Removal of the State Court action. When an action pending in a state court is removed to bankruptcy court (28 USC § 1452), it is litigated as an adversary proceeding. (FRBP 7001(10)) Their right to remove under § 1452(a) is because the causes of action as to which the district court would have

jurisdiction under 28 USC § 1334 (i.e., cases Arelated to the bankruptcy cases). (28 USC §
1452(a)) State claims may be removed to federal court under the general federal removal statute
based on federal question (including state law claims that are transnationally related to the federal
question claims) (28 USC §1441) provided it is "related to" a bankruptcy case which they are.

### FIRST CLAIM OR CAUSE OF ACTION

(**Violations of the Racketeer Influence and Corrupt Organizations act)**

**(by Plaintiffs against Defendants Ely Dromy, David Dromy, Silver Lake Park)**

60. Plaintiffs restate and incorporate by reference hereat, the above paragraphs 1 through 59
as if fully set forth hereat.

61. Ely Dromy violated Rone Oren's rights pursuant to Title 18 USC § 1512(b) by (1)
knowingly or corruptly engaging in unlawful conduct toward Oren, threatening Oren with death if
Oren did not pay to Ely Dromy an amount Ely Dromy demanded as part of his State Court action,
and Eli Dromy's intent was to delay or prevent Oren's testimony part of which is contained in this
Verified Adversary Proceeding which demonstrates Ely Dromy's misconduct, failure to mitigate and
Ely Dromy's refusal to provide his personal guarantee as being the proximate cause of the loss of the
purchase and sale of the portfolio of 17 hotels; and (2) caused Oren:

(A) To be intimidated from giving his truthful testimony as noted in this Verified Adversary
Proceeding which assists the Court in finding the proximate cause of the failure of the purchase and
sale of the portfolio of 17 hotels  and, (B) caused the legal process which initially summoned Rone
Oren to initially produce his Answer in the official proceeding to be corrupted and thus evaded;

(B) Violated Oren's rights pursuant to Title 18 USC § 1512(d) by intentionally harassing
Oren with death threats, the proximate result of which hindered, delayed, and prevented Oren from
fully testifying in the official proceedings of Ely Dromy's and SLP's case as Oren has herein testified
by virtue of this Verified Adversary Proceeding;

(C ) Violated Oren's  rights pursuant to Racketeer Influence Corrupt Organizations Act
("RICO"), in that the actions of issuing continuous death threats, and continuing threatening actions
and cover up of a continuous death threat was (1) conduct and Ely Dromy's conduct was for the
benefit of his company SLP which was (2) an enterprise and Ely Dromy and SLP engaged in their

1  activity of constant physical threats and covering up the constant and continuing physical threats in

2  an obstruction of justice (3) through a practice pattern; and the activity of violating Title 18 USC §

3  1512(b)-(d) was (4) racketeering activity under 18 USC 1961(1)(b);

4      62. Ely Dromy violated Oren=s rights protected under 42 USC § 1985(2) because

5  professionalism and civility are the means by which a court having jurisdiction over the subject

6  matter asserts its jurisdiction over the party and brings home to all litigants the reasonable process to

7  secure a neutral forum for all people to resolve their differences in a peaceful, non-violent manner.

8      63. Such neutral, civil forum is an indispensable element of due process of law.

9      64. Public policy encourages the free access to the legal system and requires executors to

10  perform their function responsibly, justifying a legal duty of care towards the individual executor.

11      65. Oren was due a judicial process to protect him against the potentially severe

12  consequences which were likely to result if Ely Dromy,  and all cross defendants, and each of them,

13  did not perform their task as prescribed by law, and threatened Oren when he, Oren attempted to

14  perform legal duties for the debtor defendant corporations.

15      66. Public policy required Ely Dormy and all defendants, and each of them to faithfully

16  execute their duties and not interfere in a physically threatening manner with the duties of the

17  director and officer of the debtor defendant corporations.

18      67. The threats from Ely Dromy and all defendants, and each of them were ongoing,

19  continuous, and occurred even after Oren summoned the help of the Los Angeles County Sheriff's

20  Department. And the threats did not cease and desist and as such, were unnecessary, unwarranted and

21  unacceptable un-civil actions which involved more than merely an absence of care, the threats were

22  intentional acts, i.e., conscious wrongdoing, thus, the threatening activity was more than a technical

23  mishap.

24      68. The efficacy of the wrongful life-threatening conduct of death threats is the creation of

25  chaos in the legal community.

26      69. If the wrongful activity is not enjoined, the legal community will not be able to depend on

27  the truthfulness of witnesses.

28  ///

Adversary Complaint by Plaintiffs Sherr, Rasbe, Emmet and Rone Oren against all named Defendants

70. Public policy requires that it be regarded as serious, with consequences sufficiently adverse to act as deterrence.

71. Ely Dromy took the actions he did take, and made the death threats against Rone Oren he did make for the benefit of SLP, his son, David Dromy, also a principal of SLP, and for all other Defendants to intimidate Oren to capitulate to Ely Dromy's demands as set forth above, which directly impacted the rights of Sherr, Rasbe and Emmet, as Oren is their sole Director and President and these entities actually received the funds Ely Dromy is demanding Oren return to Silver Lake Park. Ely Dromy, and all Defendants, and each of them, have no defense of California=s litigation privilege as Oren's RICO claims are predicated on violations of federal statutes which preempt California's litigation privilege as noted in *Lauter v. Anoufrieva* (C.D. Cal. July 14, 2010) 2010 WL 3504745, *11, *13, citing *Johnson v. JP Morgan Chase Bank dba Chase Manhattan*, 536 F.Supp.2d 1207, 1213 (E.D.Cal.2008) and; *Oei v. North Star Capital Acquisitions, LLC*, 486 F.Supp.2d 1089, 1098 (C.D.Cal.2006)

72. As a proximate result of the actions of Ely Dromy and SLP and David Dromy, Plaintiffs' Oren, Sherr, Rasbe and Emmet have been damaged in an amount according to proof and at a minimum an amount in excess of the minimum amount to invoke the jurisdiction of this court**,** costs of suit and attorney fees. Furthermore, the actions of Defendants, and each of them, were intentional, deceit, concealing material facts as Defendants specifically intended to deprive Plaintiff of their property, money, legal rights and caused Plaintiffs injury and, the conduct of Defendants, and each of them, was despicable, subjecting Plaintiff Oren to humiliation, mental distress, with a conscious disregard of Plaintiff's rights so as to justify an award of exemplary and punitive damage.

## **SECOND CLAIM OR CAUSE OF ACTION**

### (**Obstruction of Justice under Title 42 U.S.C 1985(2)**)

**(by Plaintiffs against Defendants Ely Dromy, David Dromy, Silver Lake Park)**

73. Plaintiffs restate and incorporate by reference hereat, the above paragraphs 1 through 72 as if fully set forth hereat.

74. The actions of Ely Dromy, and all defendants, and each of them as noted above were a conspiracy, the purpose of which targeted Oren with intimidation and physical and legal threats so

1  Oren,  and all defendants and each of them could make a considerable financial gain by intentionally

2  denying Oren  the equal protection or dignities of such laws.

3      75. Ely Dromy, and all defendants, engaged a series of overt acts described above, to

4  facilitate their conspiracy of "tampering of a witness" through threats and death threats, the practice

5  pattern of which destined Ely Dromy and all defendants, and each of them, to profit financially by

6  personally threatening Oren.

7      76. The first step in the conspiracy occurred when Ely Dromy realized that Oren would not

8  acquiesce to Ely Dromy's  extortion to pay him millions of dollars or Ely Dromy would go to the

9  police. Our system of justice does not allow for the continuing types of threats against party litigants,

10  and the Sheriff's department was summoned to ensure that Ely Dromy would cease and desist from

11  all such threatening activity.

12      77. The scheme of the conspiracy was (1) to continually threaten Oren to cause him to be

13  apprehensive about proceeding to connive a means to ensure that Ely Dromy and his company, Silver

14  Lake Park would coerce money from Oren  (2) threatening to file an action against Oren and when

15  Oren  continued lawfully with his duty as director and officer of the debtor corporations, and

16  undertook an investigation to assemble facts to allow the Court to make a decision on the facts which

17  were uncovered (3) Oren, as director and officer of the debtor corporations was then threatened

18  physically, (4) such physical threat occurring in the presence of others, (5) to intimidate and

19  humiliate Oren to induce him to withdraw from any further participation in the case and to coerce

20  him into a settlement which Oren knew was not lawful.

21      78. Oren is a member of a class who participate in a public forum in the legal process who are

22  protected from witness intimidation, and deprived, directly or indirectly, of the equal protection or

23  equal privileges of the law, when some person engages in activity to interfere with their attempt to

24  provide witness testimony or present documents to a judicial officer to assist the judicial officer in

25  the manner in which Ely Dromy and all defendants, and each of them effected the threatening,

26  intimidating and humiliating activity on Oren as the director and officer and shareholder of the debtor

27  defendant corporations. The conspiratorial conduct of Ely Dromy, and all defendants, and each of

28  them, was propelled by class based invidious discriminatory animus.

79. As a proximate result of the actions of Ely Dromy, and all defendants, and each of them as described above. Oren, Sherr, Rasbe and Emmet are entitled to damages in an amount according to proof and at a minimum an amount in excess of the minimum amount to invoke the jurisdiction of this court for his 42 U.S.C § 1985.2 claim, plus damages for emotional distress, plus punitive damages, costs of suit and attorney fees. Furthermore, the actions of Defendants, and each of them, were intentional, deceit, concealing material facts as Defendants specifically intended to deprive plaintiff of his property, money, legal rights and caused Plaintiff injury and, the conduct of Defendants, and each of them, was despicable, subjecting Plaintiff Oren to humiliation, mental distress, with a conscious disregard of Plaintiff's rights so as to justify an award of exemplary and punitive damage.

## **THIRD CLAIM OR CAUSE OF ACTION**

### **(Civil Rights Violations under Title 42 U.S.C 1985(3))**

(by Plaintiffs against all Defendants)

80. Plaintiffs restate and incorporate by reference hereat, the above paragraphs 1 through 79 as if fully set forth hereat.

81. California and the United States created law, including the statutes cited herein to be applied equally. Defendants intentionally denied Plaintiffs the equal protection or dignities of such laws.

82. Defendants actions as noted above were a conspiracy, the purpose of which targeted the Plaintiffs so Defendants, and each of them, could make a considerable financial gain.

83. Defendants engaged a series of overt acts described above, to facilitate their conspiracy, a sinister practice pattern of which destined Defendants to profit financially by misrepresenting the reasons for the ultimate collapse of the business transaction which purchased the portfolio of the 17 hotel properties.

84. The scheme of the conspiracy was (1) to make it appear that the Dromy's and SLP did not read the March 31, 2015 agreement which was given to them by Oren for the buyer, VCV, and the seller, First Capital, and for himself and for Sherr, Rasbe and Emmet, (2) by placing payments into escrow and then claiming subsequently that they had no knowledge of the facts of the March 31,

2015 agreement of which they were expressly given a copy, (3) misrepresent that they had not been

made aware of the payment schedule in the March 31, 2015 agreement, when the Defendants Dromy

and SLP knew, or reasonably should have known, that they received the a full and complete copy of

the March 31, 2015 agreement both personally from Oren and by e-mail from Oren, (4) file an action

against the other members of the transaction except Oren, Sherr, Rasbe and Emmet and have

defendants entities and their principals agree to lift the onus of responsibility from their shoulders by

pointing a fickle finger of fate at Oren, Sherr, Rasbe and Emmet as the only perpetrator, and (5)

engage a campaign of overt physical threats of violence against Oren if he did not capitulate to his

demands and have Sherr, Rasbe and Emmet return all funds that Ely Dromy had placed into escrow,

orally, to consummate the purchase of the 17 hotel portfolio and (6) settle the claims the Dromy's

and SLP had against the seller First Capital and its principal Singal for approximately 6.9 million and

the buyer, VCV and its principal Guiglielmo for 1.9 million with a Stipulation for Entry of Judgment

for violation of fiduciary duty when the Dromy's and SLP made it known that (a) both the seller and

the buyer  and their principals were judgment proof as they had protected their visible assets from

satisfaction of the amount to which they agreed and for which they Stipulated to an Entry of

Judgment, and (b) knowing that it was to Seller First Capital and its principal Singal and buyer VCV

and its principal Guglielmo who authorized the release of funds from escrow to be paid to Sherr,

Rasbe and Emmet, and (c) conspiring that such settlement and Stipulation for Entry of Judgment by

the Seller and the Buyer and its principals would implicate Sherr, Rasbe, Emmet, and Oren, and

erode the meritorious and verifiable defense of Sherr, Rasbe, Emmet and Oren as hereinabove noted.

85. Plaintiffs Sherr, Rasbe and Emmet have suffered and will suffer a substantial financial

injury, and their sole Director and President Oren has suffered emotional distress doing so, all

calculated by the conspiracy scheme.

86. Plaintiffs are members of a class deprived, directly or indirectly, of the equal protection or

equal privileges of the law, when who participate in a public forum in the legal process who are

protected from witness intimidation, and deprived, directly or indirectly, of the equal protection or

equal privileges of the law, when some person engages in activity to interfere with their attempt to

provide witness testimony or present documents to a judicial officer to assist the judicial officer in

1   the manner in which Ely Dromy and all defendants, and each of them effected the threatening,

2   intimidating and humiliating activity on Oren as the director and officer and shareholder of the debtor

3   defendant corporations. The conspiratorial conduct of Ely Dromy, and all defendants, and each of

4   them, was propelled by class based invidious discriminatory animus.

5        87. Plaintiff is entitled to damages in the amount according to proof and at a minimum an

6   amount in excess of the minimum amount to invoke the jurisdiction of this court for his 42 U.S.C §

7   1985.3 claim, plus damages for emotional distress, plus punitive damages, costs of suit and attorney

8   fees. Furthermore, the actions of Defendants, and each of them, were intentional, deceit, concealing

9   material facts as Defendants specifically intended to deprive Plaintiffs of their property, money, legal

10   rights and caused Plaintiff Oren injury and, the conduct of Defendants, and each of them, was

11   despicable, subjecting Plaintiff to humiliation, mental distress, with a conscious disregard of

12   Plaintiff's rights so as to justify an award of exemplary and punitive damage.

13               **FOURTH CLAIM OR CAUSE OF ACTION**

14            (**Violations of California Business and Professions Code 17200**)

15        **(by Plaintiffs against Defendants Ely Dromy, David Dromy and Silver Lake Park)**

16        88. Plaintiffs restate and incorporate by reference hereat, the above paragraphs 1 through 87

17   as if fully set forth hereat.

18        89. California's Business and Professions Code ("B&P") '17200, the Unfair Competition

19   Law, defines unfair competition to include, any unlawful, unfair or fraudulent business act or

20   practice. The unlawful practices supporting a 17200 claim are any practices forbidden by law be it

21   civil or criminal, federal or state, municipal, statutory, regulatory or, court made. In effect Unfair

22   Competition Law borrows violations of other laws and treats them as unlawful practices

23   independently actionable under B&P § 17200.

24        90. Ely Dromy, and all defendants, and each of them, violated Oren's rights by engaging in an

25   Unlawful Business practice under California Business & Professions Code  § 17200, as they:

26        A.  Violated Oren's rights pursuant to Title 18 USC § 1512(b) by (1) knowingly or corruptly

27   engaging in misleading conduct toward Oren with intent to delay or prevent his testimony in the

28   initial official proceedings in the case; and (2) caused Oren (A) to initially withhold his testimony in

the official proceedings as hereinabove stated; and (B) caused Oren to be intimidated in the official

proceedings of the Case to which Oren was duty bound to testify by legal process; and,

B. Violated Oren's rights pursuant to Title 18 USC 1512(d) by intentionally harassing Oren

with death threats, hindering, delaying, and preventing him from fully and completely testifying in

the official proceedings of the Case as he has in this Verified Adversary Proceeding Complaint; and,

C. Violated Oren's rights pursuant to Racketeer Influence Corrupt Organizations Act

("RICO"), in that the threatening actions of Ely Dormy was (1) conduct; and his law practice was (2)

an enterprise; and he engaged in the activity of threatening and harassing in an obstruction of justice

(3) through a practice pattern; and the activity of violating Title 18 USC § 1512(b)-(d) which was (4)

racketeering activity under 18 USC § 1961(1)(b); and,

D. Violated Oren's rights pursuant to Title 42 USC § 1985.2, that is, Ely Dormy intended to

deny to Oren the equal protection of the laws, and to injure Oren  emotionally and financially from

lawfully enforcing, or attempting to enforce his rights to the equal protection of the laws to be given

proper opportunity to fulfill his role as director and officer and shareholder of the debtor defendant

corporations in the process of the case which would enable him to proceed to give testimony as a

witness and present witnesses and documentation in the Case; and,

E. Because the practice pattern of threatening and the trying to cover up their activities with

further threats was an obstruction of justice pursuant to Title 18 U.S.C. ' 1503 et. seq. which provides

that anyone who "corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct,

or impede, the due administration of justice" is guilty of obstruction of justice; and,

G. Ely Dromy violated Oren's  rights pursuant to Title 18 USC  § 1621, perjury, by falsely

testifying under oath and in his subsequent declarations about material matters, his testimony was

false, he knew his testimony was false, and he gave his testimony in his declarations voluntarily and

intentionally, and did so to obstruct justice, not merely inaccurately as result of confusion or faulty

memory; andd,

H. Violated Oren's rights pursuant to Title 18 USC § 1622, subornation of perjury, procuring

his son. David Dormy, to commit perjury, and to testify falsely under oath in his deposition and

declaration about material matters, his testimony was false, he knew his testimony was false, and he

1  gave his testimony in his declarations voluntarily and intentionally, and did so to obstruct justice, not

2  merely inaccurately as result of confusion or faulty memory.

3          I. Violated the rights of the Plaintiffs pursuant to 42 USC § 1985.3 as described above.

4          91. Oren's  § 17200 claims are factually and legally predicated on the violations of federal

5  law prohibiting witness tampering (18 U.S.C.  § 1512(b)-(d)), RICO (18 USC  § 1961(b)(1),

6  obstruction of justice (18 USC  § 1512(b)) civil rights violations (42 USC  § 1985.2 and  § 1985.3)

7  perjury (18 USC  § 1621) and subornation of perjury (18 USC  § 1622).

8          92. Ely Dromy, and all Defendants, and each of them, have no defense of California=s

9  litigation privilege as Oren's B&P  § 17200 claims are predicated on violations of federal statutes

10 which preempt California's litigation privilege as noted in *Lauter v. Anoufrieva* (C.D. Cal. July 14,

11 2010) 2010 WL 3504745, *11, *13 citing *Johnson v. JP Morgan Chase Bank dba Chase Manhattan*,

12 536 F.Supp.2d 1207, 1213 (E.D.Cal.2008) and; *Oei v. North Star Capital Acquisitions, LLC*, 486

13 F.Supp.2d 1089, 1098 (C.D.Cal.2006).

14         93. Oren is informed, believes and thereon alleges that he is entitled to an injunction against

15 Ely Dormy, David Dromy and SLP, and all Defendants and each of them, forever enjoining their

16 actions filed against Oren, Sherr, Rasbe and Emmet and the claims of the Dromys' and SLP are and

17 were a sham to mask the charade of Ely Dromy and SLP in their inexorable evasive sham of hiding

18 the underlying transaction to purchase a portfolio of 17 hotels for 102 million dollars in an oral

19 agreement in an effort to hide the paper trail of their involvement.

20         94. Oren  is subjected to being victimized again and justifiably fearful of an immediate

21 repeated injury by the threats and practices of Ely Dormy and all defendants, and each of them,

22 which violate his Federal and State rights, as Ely Dormy and all defendants, and each of them, have

23 repeatedly engaged in the injurious acts of threatening and the cover up of such in the past, thus there

24 is a sufficient probability that Ely Dormy and all defendants will engage in such threatening activity

25 against Oren  in the near future, substantiating Oren's  claim for injunctive relief.

26         95. Oren is reasonably threatened with future threatening practices from Ely Dormy and all

27 defendants, and each of them, given Oren's status as a director and officer of debtor defendant

28 corporations who Ely Dromy alleges stole money from him, and his ongoing legal challenges to Ely

Dormy's activity to threaten him because he tried to do his job as director and officer of the debtor

defendant corporations as Ely Dromy's repeated harmful acts which he suffered Oren was and is not

outside the control of Ely Dromy and all defendants, and each of them, and it depends solely on

whether Ely Dromy  and all defendants and each of them will continue the threats of physical

violence against Oren.

96. Oren is currently involved in litigation efforts and will be subject to additional threats and

has a reasonable prospect of being subjected to additional litigation from Ely Dromy  and all

defendants, thus the future harm to Oren by Ely Dromy and all defendants, and each of them is

probable and more than speculative.

97. Ely Dromy and all defendants, and each of them, violated Oren's rights by engaging in an

Unfair Business practice under California Business & Professions Code § 17200, as Oren's

emotional distress injury from the threats proximately causing such intimidation and humiliation is

substantial, his emotional distress injury is not outweighed by any countervailing benefits to

 consumers or competition, and his emotional distress injuries could not reasonably have been

avoided under all the foregoing circumstances.

98. Oren is not required to, but may seek class certification under California Business and

Professions Code § 17200, for a class of people in California and throughout the United States

similarly situated to Oren who have also suffered from such intimidating tactics while shouldering

their duties in the legal process from the same or similar scheme as Oren has suffered after discovery

uncovers sufficient facts regarding the issues of (a) numerosity, (b) the existence and predominance

of common questions of law and fact, (c) typicality, (d) adequacy, and (e) superiority.

99. As a proximate result, Plaintiffs are entitled to a permanent injunction against the Dromys

and SLP, and all defendants, and each of them, forever enjoining the actions as a result of the sale of

the portfolio of 17 hotels, and restitution in the amount paid to defend against the practice pattern of

threatening and the cover up of such, costs and attorney fees under California Civil Code 1021.5.

### <u>FIFTH CLAIM OR CAUSE OF ACTION</u>

**(Declaratory Relief)**

**(by Plaintiffs against all Defendants)**

Adversary Complaint by Plaintiffs Sherr, Rasbe, Emmet and Rone Oren against all named Defendants

100. Plaintiffs restate and incorporate by reference hereat, the above paragraphs 1 through 99 as if fully set forth hereat.

101. An actual controversy now exists between Plaintiff s and Defendants Ely Dromy, David Dromy and SLP relating to the legal rights and duties of the respective parties arising out of the relationship between them and the purchase and sale of the portfolio of 17 Hotel Properties.

102. Plaintiffs contend that they did not, as Defendants Ely Dromy, David Dromy and SLP allege, defraud Ely Dromy, David Dromy and SLP, did not breach an allege oral contract, that there was never an oral agreement between Plaintiffs and Ely Dromy, David Dromy and SLP, that they did not owe any fiduciary duties to Ely Dromy, David Dromy and SLP and that if there were any fiduciary duties that they did owe, they honored those fiduciary duties by making full and complete disclosures, they did not make any intentional misrepresentations or negligent misrepresentations in connection with the purchase and sale of the portfolio of 17 hotel properties, that they properly disclosed the March 31, 2015 agreement to Ely Dromy, David Dromy and SLP, that Ely Dromy was responsible for the eventual loss of the portfolio of 17 hotel properties when he refused to provide his personal guarantee to the lender who had provisionally agreed to provide the refinancing of the nine Georgia hotel properties, and that Plaintiffs' are not liable to Ely Dromy, David Dromy or SLP in any amount, and if any amount is alleged to be owed by Plaintiffs to Ely Dromy, David Dromy or SLP, said amount must be completely off set by the amount that Plaintiff Oren and the entities are entitled to receive as a result of their RICO violations against Oren and as a result of their violating Oren's rights in accordance with 42 USC § 1985.2 and the rights of Sherr, Rasbe, Emmet and Oren in accordance with 42 USC 1985.3.

103. Defendants the Dromys' and SLP deny Plaintiff's contentions. and maintain that the purchase of the 17 hotel properties and the release of funds from escrow by the buyer and seller  to the Plaintiffs defrauded them, and breached an oral agreement and fiduciary duties owed to them, and made intentional and negligent misrepresentations, and that no set off for any amount should occur.

104. An actual controversy now exists between Plaintiff s and Defendants Joseph Guglielmo and VCV relating to the legal rights and duties of the respective parties arising out of the relationship between them and the purchase and sale of the portfolio of 17 Hotel Properties.

Adversary Complaint by Plaintiffs Sherr, Rasbe, Emmet and Rone Oren against all named Defendants

105. Plaintiffs' contend that they did not, as Guglielmo and VCV now allege, execute a written indemnity agreement, agreeing to indemnify Guglielmo and VCV in the event that any litigation arose with respect to the purchase and sale of the portfolio of 17 hotel properties, and that the alleged indemnity agreement is a forgery, is not signed or dated by Oren or Sherr, Rasbe or Emmet, and the alleged indemnity agreement only bears the initials of RO for Oren and Sherr, Rasbe and Emmet, and under the totality of circumstances, Guglielmo and VCV have made an adopted admission that there is no indemnity agreement because after Guglielmo and VCV were sued by SLP, they, Guglielmo and VCV, never made a demand on Oren or Sherr, Rasbe or Emmet to indemnify them, to defend them and they did not file an cross complaint against them, answered deposition questions about the indemnity agreement in an evasive and equivocal manner, and never brought the issue to their attention except after Guglielmo and VCV entered into a settlement agreement with SLP which requires them to make a 1.9 million dollar payment to SLP within 270 days and now Guglielmo and VCV allege the indemnity agreement which only bears the initials RO.

105. Defendants Guglielmo and VCV deny Plaintiffs' contentions and maintain the indemnity agreement is valid and enforceable and deny that under the totality of circumstances, they made an adopted admission that there is no indemnity agreement.

106. Plaintiff desires a judicial determination and declaration of the respective rights, duties and obligations of Plaintiff and all Defendants, a declaration that Plaintiff's ae not liable to the Defendants Ely Dromy, David Dromy or SLP for any reason under the purchase and sale of the portfolio of 17 hotel properties, and if Plaintiff are liable to the Dromy's and SLP for any reason as a result of the purchase and sale of the portfolio of 17 hotel properties, such amount is fully and completely off set by the amount the Dromys' and SLP are found to be liable to the Plaintiff for their violations against the Plaintiffs as described above, and that Plaintiffs do not have an indemnity agreement requiring them to indemnify Guglielmo or VCV, as Plaintiff's remedy at law is not adequate and that Defendants provide all Plaintiff's attorney fees and costs.

## SIXCTH CLAIM OR CAUSE OF ACTION

### (Negligence)

### (by Plaintiff Sherr, Inc. against Ely Dromy)

107. Plaintiffs restate and incorporate by reference hereat, the above paragraphs 1 through 59 as if fully set forth hereat.

108. Sherr. Inc., had a 12.5% interest in the LLC which was to be the legal owner of the portfolio of 17 hotel properties and SLP had a 50% interest in the LLC owing the portfolio of 17 hotel properties.

109. In accordance with Ely Dromy being the alter ego of SLP and with SLP having a 50% ownership interest in the LLC which was to be the owner of the portfolio of the 17 hotel properties, he, Ely Dromy, owed a duty to Sherr, Inc., to ensure that the lender who was to refinance the nine Georgia hotels, had the personal guarantee of Ely Dromy.

110. Ely Dromy refused to provide the personal guarantee the lender required to complete the refinancing of the nine Georgia hotel properties.

111. Ely Dromy breached his duty to Sherr, Inc. whe he, Ely Dromy did not provide his personal guarantee to the lender.

112. As a proximate result of the breach of duty by Ely Dromy to provide his personal guarantee to the lender to complete the refinancing of the nine Georgia hotel properties, Sherr, Inc. has suffered a massive financial injury, and has been damaged in an amount according to proof, but in excess of seven (7) million dollars.

**WHEREFORE**, Debtor and Plaintiff Sherr, Rasbe, Emmitt and Oren rays for judgment against all Defendants, and each of them as follows:

**On the First, Second and Third Claims or Causes of Action**:

1. For compensatory damages in the amount according to proof;

2. For punitive damages in an amount according to proof;

3. For costs of suit and attorney fees;

4. For such other and further relief as the Court may deem just and proper.

**On the Fourth Claim or Cause of Action**

1. For an injunction in a form to be submitted to the Court that Defendants Ely and David Dromy and SLP and their successors and assigns are permanently enjoined from proceeding in any action against the Plaintiff for any claim as a result of the purchase and sale of the portfolio of 19 hotel properties, or the release of funds from escrow to Sherr, Inc, Rasbe, Inc, or Emmet, Inc.;

2. For costs of suit and For attorney fees under the Cal, Civ. Cd. 1021.5;

3. For such other and further relief as the Court may deem just and proper.

**On the Fifth Claim or Cause of Action**

1. For a declaration that Plaintiffs are not liable to Ely Dromy, David Dromy of SLP or any of their successors and assigns for any claims or causes of action as a result of the purchase and sale of the portfolio of 17 hotel properties;

2. For a declaration that Plaintiffs are not required to provide back any payments made to Sherr, Rasbe, and Emmet from funds disbursed from escrow to them;

3. For a declaration that if Plaintiff's are found liable to Ely Dromy, David Dromy or SLP, said amount will be completely off set by the amount Ely Dromy will be declared to owe to Oren and the entities as a result of the RICO violations against Oren and as a result of their violating Oren's rights in accordance with 42 USC 1985.2 and 1985.3;

4. For a declaration that Plaintiffs never signed or initialed an indemnity agreement agreeing to indemnify Joseph Guglielmo or VCV or their successors and assigns and that Plaintiffs are not required to indemnify Joseph Guglielmo or VCV for any reason as a result of the purchase and sake of the portfolio of 17 hotel properties.

5. For costs of suit;

6. For such other and further relief as the Court may deem just and proper.

**On the Sixth Claim or Cause of Action**

1. For damages in an amount according to proof but in excess of 7 million dollars;

2. For costs of suit;

3. For such other and further relief as the Court may deem just and proper.

Dated: July 12 2019

Respectfully filed by:

/s/ Khachik Akhkahsian

Law Offices of Khachik Akhkash
by Khachik Akhkahshian, Esq.
Attorney for Debtor and Debtor/Plaintiffs
Sherr, LLC, Rasbe, Inc. Emmet Inc. And
Rone Oren

## VERIFICATION

I, Rone Oren, declare that I have read the foregoing Verified Adversary Proceeding Complaint, and know the contents therein.

I am a Director and the President of Sherr, LLC, Rasbe, Inc. And Emmet, Inc, in this action and I make this verification for that reason.

I have read the foregoing document described as a Verified Adversary Proceeding Complaint for 1. Violations of the Racketeer Influence and Corrupt Organizations Act, 2. Obstruction of Justice under Title 42 USC § 1985(2, 3. Civil Conspiracy under Title 42 U.S.C § 1985(3), 4. Violators of California='s Business and Professions Code § 17200, and 5. Declaratory Relief and know its contents. The matters stated in it are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury, under the laws of the State of California, and under the laws of the United states of America, that the foregoing is true and correct.

Dated: July 12, 2019

Rone Oren

///
///
///
///
///
///
///
///
///
///
///
///
///

Adversary Complaint by Plaintiffs Sherr, Rasbe, Emmet and Rone Oren against all named Defendants