| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Michael N Sofris<br>468 N Camden Dr Ste 200<br>Beverly Hills, CA 90210<br><br>310-229-4505<br><br><br><br><br>*Plaintiff or Attorney for Plaintiff* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – SANTA BARBARA

| In re:<br><br>Sherr, LLC<br><br><div align=right>Debtor(s).</div> | CASE NO.: 9:19-bk-11123-MB<br><br>CHAPTER: 7<br><br>ADVERSARY NUMBER: 9:19-ap-01032-MB |
|---|---|
| Sherr, LLC<br><br>**(See Attachment A for names of additional plaintiffs)**<br><div align=right>Plaintiff(s)</div><div align=center>Versus</div>Silverlake Park, LLC<br><br>**(See Attachment A for names of additional defendants)**<br><div align=right>Defendant(s)</div> | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is **08/12/2019.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| Date: | **September 18, 2019** |
| Time: | **02:30 PM** |
| Hearing Judge: | **Martin R. Barash** |
| Location: | **1415 State St., Crtrm 201, Santa Barbara, CA 93101** |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court–approved joint status report form is available on the court's website (LBR form F 7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL
CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: <u>July 12, 2019</u>

By: <u>    "s/" Amber Ortiz    </u>

Deputy Clerk



This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_December 2016_                              Page 2                              **F 7004–1.SUMMONS.ADV.PROC**

# ATTACHMENT A
## Names of plaintiffs and defendants

| Plaintiff(s): | Defendant(s): |
|---|---|
| Sherr, LLC<br>Rasbe, Inc<br>Emmet Inv, Inc.<br>Ron Oren | Silverlake Park, LLC<br>VC Visions, LLC<br>Ely Dromy<br>David Dromy<br>Joseph GUGLIELMO |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**ATTACHMENT A**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005–2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (<u>state method for each person or entity served</u>): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _____ | _____ | _____ |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                                                    **F 7004–1.SUMMONS.ADV.PROC**

Khachik Akhkashian. Esq.  CSB  213607
Law Offices of Khachik Akhkashian
Montrose Shopping Park
2418 Honolulu Avenue, Suite G
Montrose, California 91020
Tel.: (818) 249-2220; Fax: (818) 249-2297
Akhkashianlaw@yahoo.com

Attorney for Debtor and Plaintiffs

UNITED STATES BANKRUPTCY COURT

IN THE CENTRAL DISTRICT OF CALIFORNIA - SANTA BARBARA DISTRICT

| | |
|---|---|
| In re: SHERR, LLC, RASBE, INC, and EMMET, INC, and their sole Director and President, RONE OREN | ) CASE NO. 9:19-bk-11124-DS<br>)<br>) CHAPTER 7<br>) |
| Debtors | ) ADV. Pro. 9;19-bk-01032-MB<br>) |
| SHERR, LLC, a Delaware Limited Liability Company, RASBE, INC. a Delaware Corporation, EMMET, INC. a Delaware Corporation, and RONE OREN the Sole Director and President of SHERR, LLC, RASBE, INC. AND EMMET, INC. | ) VERIFIED COMPLAINT FOR:<br>)<br>)<br>)<br>)<br>) 1. VIOLATIONS OF THE RACKETEER<br>)    INFLUENCE AND CORRUPT<br>)    ORGANIZATIONS ACT |
| Plaintiffs | ) 2. OBSTRUCTION OF JUSTICE UNDER<br>)    TITLE 42 USC 1985(2) |
| ELY DROMY, DAVID DROMY, SILVER LAKE PARK, LLC. JOSEPH GUGLIELMO, VC VISIONS, LLC, a California Limited Liability Com. and DOES 1-100, inclusive | ) 3. CIVIL CONSPIRACY UNDER<br>)    TITLE 42 U.S.C 1985(3)<br>) 4. VIOLATIONS OF CALIFORNIA BUSINESS<br>)    AND PROFESSIONS CODE 17200<br>) 5. DECLARATORY RELIEF |
| Defendants | ) 6. NEGLIGENCE<br>) |

## FEDERAL BANKRUPTCY COURT JURISDICTION

1. Plaintiffs, as the pleaders do consent to entry of final orders or judgment by the bankruptcy

court (FRBP § 7008), and this action is brought under FRBP § 7001(1), to recover money and

property, FRBP § 7001(6) a proceeding to determine the discharge of an alleged debt, FRBP 7001(7)

a proceeding to obtain an injunction or other equitable relief,. FRBP § 7001 (9) a proceeding to

obtain a declaratory judgment relating to any of the foregoing and FRBP § 7001 (10) a proceeding to

determine a claim or cause of action removed under 28 U.S.C. § 1452.

1

## VENUE

2      2. Venue is proper under 28 USC § 1409(a) because the debtor corporate entities filed their

3    Chapter 7 proceeding in the Santa Barbara Division of the United States District Court for the Central

4    District of California, and all of events described in the Adversary Proceeding took place in Los

5    Angeles County California, in the Jurisdiction of the United States District Court for the Central

6    District of California, and the primary place of business of the debtor Plaintiff corporations is in

7    Malibu, California and the primary residence of the sole director and officer of the debtor plaintiff

8    corporations is in Malibu, California.

9

## NATURE OF THE ACTION

10      3. Plaintiffs on behalf of their creditors, investors and shareholders, complain against all

11    Defendants for the claims alleged as a result of a conspiracy to place the onus of responsibility for the

12    loss of a portfolio of hotels worth in excess of 102 million after escrow closed.

13      4. Silver Lake Park, LLC (SLP) was a third party investor, introduced by Oren to the buyer

14    VCV to purchase a Portfolio of hotel properties, nine in Georgia and eights in five other states, and

15    SLP invested 13 million in a buyer for a 50% interest in the LLC that owned the portfolio of 17 hotel

16    properties and a $100,000.00 monthly payment until the 13 million was repaid. Buyer mislead Oren

17    during escrow claiming that buyer will be putting $13 million dollars cash and equity into the deal to

18    purchase the portfolio of hotel properties all over the US.

19      5. After escrow closed, and after two monthly payments by the Seller stopped, Seller took full

20    responsibility for returning the Dromys' $13,000,000.00, SLP refused and filed suit against the seller,

21    and eventually the buyer in a SAC, and the escrow company in a separate action. In complaint and

22    the FAC, SLP noted that Oren and the entities acted properly. While litigating the FAC. SLP, through

23    its managing member, Ely Dormy, then demanded that Oren pay his attorney fees and testify against

24    the escrow company. Oren refused. SLP then filed a SAC naming Oren and the entities as

25    Defendants for fraud through breach of an oral agreement. During suit, SLP ultimately settled with

26    the buyer and seller. But Ely Dormy threatened Oren that if he did not return the funds that were paid

27    from escrow to the debtor Sherr, Rasbe, Emmet corporations of which Oren is the sole director and

28    officer, he, Eli Dromy would file an action with the FBI and the local police. Oren did not capitate to

2

1    the extortion and blackmail and SLP filed its second amended complaint against Oren, Sherr, Rasbe

2    and Emmet in the Superior Court of California. During suit, Ely Dormy continually physically

3    threatened Oren with physical violence and with death if Oren,  on behalf of Sherr, Rasbe and Emmet

4    did not pay millions of dollars to SLP, then SLP would file a lawsuit against them.

5        6. The seller agreed to settlement of the claims Oren, Sherr, Rasbe and Emmet asserted

6    against the Seller. Oren was then informed the buyer asserted Oren had previously signed an

7    Indemnity agreement to indemnify the buyer from any claims as a result of the purchase and sale of

8    the portfolio of 17 hotels. Oren on behalf of himself and Sherr, Rasbe and Emmet alleged the

9    indemnity agreement is a forgery. Oren, on behalf of Sherr, Rasbe and Emmet allege a massive

10    conspiracy was launched against them by Ely Dormy and the buyer to take the onus of responsibility

11    off their shoulders and unlawfully place it on the shoulders of Oren and the corporate entities and

12    thus they file their Adversary Proceeding Complaint against all defendants for RICO Violations,

13    Obstruction of Justice, Civil Rights Conspiracy, Violations of California's B&P § 17200 and seek

14    Declaratory Relief.

15        **COMPULSORY JOINDER OF RONE OREN**

16        7. Under the rules of Compulsory Joinder for a just determination (FRBP 7019 incorporating

17    FRCP § 18) Rone Oren must join in the Adversary Proceeding as a Plaintiff because (A) he is the

18    sole director and sole officer and majority shareholder of the debtor Plaintiff Sherr, Rasbe and

19    Emmet, and (B) SLP and the Dromy's allege that Oren is the alter ego of the debtor Plaintiff Sherr,

20    Rasbe and, Emmet, ad (C) induced the funds to be released from escrow to these entities, and (D)

21    induced the entities to transfer the funds to him, and (E) the corporate entities can only make

22    decisions through its director and officer, and his joinder will not deprive the court of subject-matter

23    jurisdiction (FRVP 19(a)(1), and must be joined as a party because in his absence, the court cannot

24    accord complete relief among existing parties (FRCP § 19(a)(1)(A), and under FRCP § 19(a)(1)(B),

25    The interest of Rone Oren interest and the corporate entities are identical as they relate to his claims

26    against the Defendants and as they relate to the subject of the action and are so situated that disposing

27    of the action in the absence of Rone Oren or the corporate entities will, as a practical matter impair or

28    impede his ability to protect the interest of the corporate entities (FRCP § 19(a)(1)(B)(i) or leave the

1  corporate entities subject to a substantial risk of incurring double, multiple, or otherwise inconsistent

2  obligations because of the interest. (FRCP § 19(a)(1)(B)(ii))

3                                        **PARTIES**

4       8. Debtor and Plaintiff Sherr, LLC ("Sherr" and/or "Plaintiff") is, and at all times mentioned

5  in this Adversary Proceeding Complaint, was a Delaware limited liability company and its principal

6  place of business in Malibu Cal., and Rone Oren is its sole director, sole officer and majority

7  shareholder.

8       9. Debtor and Plaintiff Rasbe, Inc, ("Rasbe" and/or "Plaintiff") is, and at all times mentioned

9  in this Adversary Proceeding Complaint, was a Delaware Corporation and its principal place of

10  business in Malibu California, and Rone Oren is its sole director, sole officer and majority

11  shareholder.

12       10. Emmet, Inc. ("Emmet and/or "Plaintiff") is, and at all times mentioned in this Adversary

13  Proceeding Complaint, was a Delaware Corporation and its principal place of business in in Malibu

14  California, and Rone Oren is its sole director, sole officer and majority shareholder.

15       11. Rone Oren ("Oren" and/or "Plaintiff") is, and at all times mentioned in this Adversary

16  Proceeding Complaint, was a California resident, residing in Los Angeles County in the City of

17  Malibu, California, and he is the sole Director and sole officer of Sherr, Rasbe and Emmet.

18       12. Silver Lake Park, LLC ("SLP" or "Defendant") is, and at all times mentioned in this

19  Adversary Proceeding Complaint was a California limited liability company, doing business in, and

20  subject to the jurisdiction of the State of California, and the County of Los Angeles.

21       13. Ely Dromy ("Ely Dromy" or "Defendant") is, and at all times mentioned in this Adversary

22  Proceeding Complaint was a resident of Los Angeles County, and subject to the jurisdiction of the

23  State of California, and the County of Los Angeles, and is one of the principals of Silver Lake Park,

24  LLC., and, on behalf of Silver Lake Park and his son, Defendant David Dromy, is alleged to have

25  entered a conspiracy as more properly alleged below, against Oren and the entities of which he is the

26  director and principal, Sherr, Rasbe and Emmet.

27       14. David Dromy ("David Dromy" or "Defendant") is, and at all times mentioned in this

28  Amended Complaint was a resident of Los Angeles County, and subject to the jurisdiction of the

1    State of California, and the County of Los Angeles and also one of the principals of Silver Lake Park,

2    LLC, and, on behalf of Silver Lake Park and his father, Defendant Ely Dromy, is alleged to have

3    entered into a conspiracy as more properly alleged below, against Oren and the entities of which he is

4    the director and principal, Sherr, Rasbe and Emmet.

5         15. Joseph Guglielmo, ("Guglielmo" or "Defendant Guglielmo") is, and at all times

6    mentioned in this Adversary Proceeding Complaint was a resident of Los Angeles County, and

7    subject to the jurisdiction of the State of California, and the County of Los Angeles and also one of

8    the principals of Visions, VC, LLC, and, on behalf of Visions VC, LLC, and Ely Dromy, David

9    Dromy and Silver Lake Park, is alleged to have entered a conspiracy as more properly alleged below,

10    against Oren and the entities of which he is the director and principal, Sherr, Rasbe and Emmet.

11         16. VC Visions, LLC ("VCV") is, and at all times mentioned in this Adversary Proceeding

12    Complaintwas, a Delaware limited liability company, doing business in, and subject to the

13    jurisdiction of the State of California, and the County of Los Angeles, and on behalf of Guglielmo,

14    and Ely Dromy, David Dromy and Silver Lake Park, is alleged to have entered into a conspiracy as

15    more properly alleged below, against Oren and the entities of which he is the director and principal,

16    Sherr, Rasbeand Emmet.

17         17. At this time, Sherr, Rasbe, Emmet and Oren ("Plaintiffs") are ignorant of the true names

18    and capacities of the Defendants sued herein as DOES 1 through 100, inclusive, and therefore sues

19    these Defendants by such fictitious names. DOES 1 through 100 inclusive are all persons claiming

20    any legal or equitable interest in the property that is the subject of this action or whose joiner is

21    required to resolve the Plaintiffs claims herein. Each of the defendants designated herein as a

22    fictitiously named Defendants 1 - 100 is, in some manner, responsible for the events and happenings

23    referred to and are liable to the Plaintiffs for monetary damages.

24         18. Plaintiffs will amend this Verified Adversary Proceeding Complaint to allege the true

25    names and capacities of Does 1- 100 when ascertained. At all times mentioned herein, each of the

26    Defendants and DOE Defendants , whether individual, corporation, partnership, limited liability

27    company, joint venture, unincorporated association or other business entity of unknown form, and,

28    or, whether named or sued by fictitious name, was the agent, servant, employee and, or, officer,

1   director or partner of each of the other Defendants and in doing the things herein alleged, each of the

2   Defendants were acting within the course and scope of such agency, employment or capacity, with

3   the permission and consent of each of the other Defendants, unless otherwise stated herein. For the

4   purpose of convenience, all references to named Defendants herein, shall include the DOE

5   Defendants, unless otherwise stated.

6       19. Each of the Defendants, whether individual, corporate, partnership, joint venture, limited

7   liability company, unincorporated association, or other business entity of unknown form, and/or

8   whether named or sued by fictitious name other than DOES 1- 100, is responsible in some manner

9   for the damages suffered by Plaintiffs; and, Plaintiffs will seek leave of this Court to amend this

10  Verified Adversary Proceeding Complaint to add additional causes of action and appropriate

11  charging allegations, including additional claims against Guglielmo and VCV  when discovery

12  reveals the true nature of the actions of all Defendants, and each of them.

13                          **GENERAL ALLEGATIONS**

14      20. In or ab0ut October 2014, Real Estate Broker Mark Mimms ("Mimms") was contacted by

15  a broker friend of his working at Sperry Van Ness informing him that he had a broker from Northern

16  California that had a client that had some hotels that they wanted to sell, and he wanted to know if

17  Mimms had a buyer for the hotels. Mimms reviewed some basic information regarding the hotels,

18  and contacted one of his best clients, Guglielmo  with whom he had previously brokered business

19  transactions. Guglielmo expressed interest in purchasing the hotels and Mimms contacted the seller,

20  First Capital Real Estate Investment, LLC ("First Capital"), and its managing

21  member, Suneet Singal through its broker, Susan McShannock ("McShannock") both of which he

22  had not previously met and of whom he had no prior knowledge.

23      21. First Capital through McShannock began sending financial documents on the hotel

24  properties, and Guglielmo through Mimms moved forward with the transaction with a Letter of

25  Intent ("LOI").

26      22. The seller, First Capital, owned eight hotels in 5 states and had a contract to purchase 9

27  hotel properties in Georgia; these nine hotels were in escrow and required a new loan to facilitate the

28  closing of the escrow. Guglielmo put together a deal in which First Capital as the seller, signed a

6

Purchase and Sale agreement for a company of which Guglielmo was the managing member of VCV as buyer, to purchase the seller's (First Capital) Portfolio for 100.1 million with a 30 million cash deposit from one of VCV's equity investors from Beverly Hills.

23. Approximately one month after Guglielmo and Singal constructed the deal, the equity investor backed out and VCV had to obtain a new equity investor. Guglielmo then met with Rone Oren ("Oren") and Oren was tasked to be a "finder" of a new equity investor. Oren met with Ely Dromy of Dromy International Investment Corporation ("DIICO");  Ely Dromy is the alter ego of DIICO.

24. Ely Dromy consented to be the new equity investor for VCV to purchase First Capital's portfolio of 17 hotel properties.

25. Oren's status as a "finder" modified to an unregulated facilitator associated with the purchase and sale transaction between First Capital as seller, and Guglielmo, VCV, as buyer and Ely Dromy and DIICO as investor.

26. On January 28, 2015, Ely Dromy sent Oren an e-mail attaching a first LOI in which DIICO or its assignee, sought to acquire the portfolio of nine hotels located in Augusta, GA for $38,500,000.00 with 45 days to complete all necessary due diligence including title, environmental, property condition.

27. Guglielmo represented to Oren, and it was noted that First Capital had an additional eight hotel properties in five different states which First Capital also wanted to sell.

28. On the same day that DIICO sent its first LOI to Oren for the nine Georgia hotel properties, Oren communicated to Dromy that the buyer Guglielmo had additional eight hotel properties owned by First Capital presented on an excel spread sheet Oren sent to Ely Dromy.

29. On January 28, 2015, the same day that Ely Dromy had DIICO send Oren the first LOI for the nine Georgia hotel properties, Ely Dromy had DIICO send Oren a second LOI in which DIICO modified its first LOI and now sought to acquire the portfolio assets as mentioned in the excel Oren sent Ely Dromy earlier in the day.

30. The second LOI DIICO sent to Oren expressed that DIICO or its assignee, would:

///

(A) purchase the nine Georgia hotel properties together with the eight other hotel properties in five other different states for $102,000,000.00,

(B) with a $11,000,000.00 down payment required for;

(C) 50% ownership;

(D) that all properties are NNN leases and Wyndham owned;

(E) that rent is guaranteed from operator for 20 years with 2.5% yearly rent increases;

(F) that currently there is about $4,000,000.00 of net income after debt service & 86 units in California which will be completed with funds from the acquisition and will be free and clear;

(G) Oren was to receive a $250,000.00 commission;

(H) That "we" will have a 50/50 partnership and split all income and expenses according to our ownership percentage;

(I) Ely Dromy or DIICO or its assignee would have 100% of the tax benefits from all assets;

(J) 45 days to complete all necessary due diligence including title, environmental, property condition etc.

(K) Closing to occur 60 days from when escrow is opened, with one 30-day extension

31. Although the LOI expressed that "we" will have a 50/50 partnership, this language did not signify that Oren would be a 50% partner with Ely Dromy or DIICO. Rather, the "we" spoken about in the LOI was meant to ensure that DIICO or its assignee would own no less than 50% of the portfolio of 17 hotels, and the other 50% would be owned by the buyer, VCV, in whom Oren had an association as the facilitator of the purchase and sale agreement between the seller First Capital and buyer, VCV.

32.. While Oren does have an active real estate brokers license in California, at no time during the transaction, from the initial meeting Oren had with Guglielmo, up through the January 28, 2015 LOIs and up through the opening and closing of escrow, Oren's real estate broker's license was never employed, and Oren was never employed as a real estate agent or a real estate broker or any broker of any kind. In fact, Oren never signed a broker agreement with Ely Dormy or with DIICO or its assignee. Oren did not sign a broker agreement with First Capital or with VCV. First Capital had its broker, McShannok. VCV had its broker, Mimms. Ely Dormy is a broker and he and DIICO had

several attorneys with whom they regularly communicated on their real estate purchases. The Oren entities that received the finder's fee for Oren's facilitation had no California real estate license and the hotel properties were outside of the state of California.

33. Oren gave Guglielmo DIICO's LOI and thereafter, VCV through Guglielmo modified the purchase and sale agreement which required VCV to provide a $13 million cash down payment and First Capital was to carry the remaining $89.5 million balance until they could finance the entire portfolio, and Dromy was asked to provide proof of funds to qualify him to invest in the deal.

34. Oren's role again modified and he was as facilitator, shuttling the communication between VCV and Ely Dromy and DIICO, in which DIICO assigned its role to another Limited Liability Company Ely Dromy created, Silver Lake Park, LLC ("SLP"), and SLP stepped into the shoes of DIICO and became the investor that DIICO was in the two DIICO LOIs.

35. Throughout February and March 2015, Oren shuttled back and forth between Ely Dromy's demands and the modifications of Guglielmo, tasked with presenting the respective positions and requirements of the respective counterparts, and attempting to facilitate a consummation of the transaction between the buyer, VCV and its investor, SLP, and the seller First Capital. Oren was never asked by anyone, in writing or otherwise, to invest his own money or show proof of funds, except. when escrow was closing and short $500,000.00, the Dromy's asked Oren to place into escrow the short $500,000.00 and Sherr placed into escrow the $500,00.00 requested by the Dromy's which they returned to Sheer after escrow closed.

36. Oren provided Ely Dromy and SLP with every document he was given by VCV, and Oren also communicated to Guglielmo all questions and inquires made by the Dromys and SLP. Although Oren was not a broker for the seller or the buyer or SLP, nevertheless, he disclosed to all parties the entirety of what he was given to all parties.

37. The result of Oren's shuttling the demands of each respective party was that the seller and buyer modified the basic structure of the transaction and the portfolio of the 17 hotel properties would be still owned and held by an LLC managed by First Capital, and in which:

A. The seller, First Capital would retain a 25% interest in the LLC and portfolio of 17 hotel properties;

B. The buyer VCV would be given a 12.5% interest in the LLC and the portfolio of 17 hotel properties;

C. For Oren's role as a facilitator, one of the entities of which he was the sole director and officer, Sherr, Inc. would be given a 12.5% interest in the LLC and portfolio of 17 hotel properties;

D. SLP would be given a 50% interest in the LLC and portfolio of 17 hotel properties, the same 50% interest that Ely Dromy placed in his LOI dated January 28, 2015 plus a payment of $100,000.00 per month until his $13,000,000.00 was paid in full, even if the 13 million was fully paid in a refinance nine months to two years.

38. The down payment for the transaction, however, increased by 2 million to 13 million requiring an additional 2 million from the investor, DIICO.

39. Oren informed the Dromys not to proceed with the transaction as the terms had a material change with the addition of the 2 million dollars down payment.

40. The Dromys were eager to stay in the deal and represented that the hotel properties and the deal were worth 130 million and they informed Oren that they still wanted to proceed with the transaction notwithstanding the increase of the down payment by 2 million dollars, funded from the personal account of Ely Dromy and his spouse.

41. While the 13 million provided was being placed into escrow, First Capital as the seller, and VCV as the buyer signed an agreement on March 31, 2015, which incorporated the basic business stricture outlined in the above paragraph 37 A-D, inclusive, and this March 31, 2015 agreement was also signed by Sherr, Inc., through Oren, to memorialize that Sherr, Inc. was to receive a 12.5 % interest for the efforts of Oren in helping to facilitate the consummation of the purchase and sale of the respective interests in the portfolio of 17 hotel properties.

42. Oren delivered a copy of the March 31, 2015 agreement to the Dromys prior to escrow closing. After escrow closed. the Dromys informed Oren they could not find the March 31, 2015 agreement Oren had personally delivered to them and Oren then sent the Dromys the March 31, 2015 agreement by e-mail transmission which the Dromy;s admitted receiving.

43. Ely Dromy is a sophisticated real estate investor and through various entities and LLCs, he has bought and sold numerous hotel and apartment properties for decades in excess of hundreds of

millions of dollars. Ely Dromy and David Dromy know what due diligence is required in a real estate purchase and sale agreement. The Dromy's and DIICO had attorneys and experts with whom they consulted on their real estate transactions and had knowledge of the due diligence necessary for them to make an informed, knowing and intelligent decision whether to proceed or not. The Dromy=s admitted to receiving thousands of pages of due diligence documents for the purchase of the portfolio of the 17 hotel properties. The Dromys also admitted that after review of these thousands of pages of due diligence, they concluded the investment in the hotel properties was a sound deal.

44. Mimms, a licensed broker for over thirty years in hotel transactions in excess on a billion dollars noted that in the commercial real estate business, the buyers legitimately and lawfully put in some kind of a fee or commission in the transaction for management fees and add it to the transaction so that they get paid, at close of escrow additional monies to take care of capital expenditures and doing so is not out of the ordinary.

45. Thus, the seller, First Capital and the buyer, VCV, incorporated into the March 31, 2015 agreement that from the 13 million deposited into escrow, certain funds would be disbursed to the seller, First Capital, the buyer, VCV, and to Sheer, Emmet and Rasbe for Oren=s facilitation efforts.

46. Escrow was to close on April 22, 2015 and closing of a transaction is when one has a purchase agreement that is signed by buyer and seller with an escrow instruction to close on a certain date.

47. The escrow instructions for the sale of the portfolio of the 17 hotel properties being sold by First Capital to VCV were the March 31, 2015 agreement.

48. SLP became the successor to DIICO in this transaction for the purchase of the portfolio of 17 hotel properties. Pursuant to the March 31, 2015 agreement of which the Dromy's and SLP were given a copy and never objected, following the authorizations of the Seller and Buyer, Stewart Title Escrow released to the Oren entaties Sherr LLC, Emmet Inc and Rasbe Inc approximately $4 million dollars. Oren did not have authority or control over the escrow or the escrow funds.

49. During escrow and prior to the close of escrow, the seller, First Capital and the buyer, VCV, sent written authorizations for escrow to make a distribution of funds placed into escrow to Sherr, Rasbe and Emmet in the amount of approximately 4 million, but Oren at the Dromy's request

1  had placed into escrow the short fall of $500,00.00, which the Dromy's returned to Sherr sometime

2  after close of escrow.

3       50. Subsequent to the close of escrow, title to the interests of approximately 8 hotels was

4  obtained but the nine Georgia hotels required refinancing as detailed in the March 31, 2015

5  agreement. The lender, as do all lenders for the purchase of commercial real estate, required a

6  personal guarantee on the loan by Ely and Judy Dromy (husband and wife) as SLP had a 50% interest

7  in the LLC in which the 9 Georgia hotels were to be held and the Dromy's were the alter egos of

8  SLP. Ely Dromy is familiar with these lender requirements based on his years of experience as a real

9  estate investor. Ely Dromy refused to provide a personal guarantee because he did not want his

10 personal name to officially appear on any document connected with this transaction to facilitate the

11 refinance of the nine Georgia hotel properties. As a proximate cause of the failure of Ely Dromy to

12 provide his personal guarantee, the lender facilitating the refinance refused to issue a new loan to

13 facilitate the closing of the hotels that were in escrow.

14      51. After the close of escrow, Ely Dromy received two monthly payments of $100,000.,00. .

15 When the refinance failed, the monthly net proceeds from the portfolio of 17 hotel properties ceased,

16 and the monthly $100,000.00 payment to Ely Dromy and SLP ceased. First Capital, through Suneet

17 Singal. had, however, previously given Ely Dromy a guarantee of receiving the $100,00000 per

18 month. Then, Suneet Singal represented that he could not fulfill the guarantee as he did not have

19 enough income from the hotel portfolio. After the close of escrow. First Capital and Suneet Singal

20 realized that Ely Dromy would absolutely not give a personal guarantee and  Singal was left with no

21 choice but to obtain the loans on his own, but his efforts were not successful.  Ely Dromy demanded

22 a return of his 13 million from the seller. The seller First Capital took full responsibility for returning

23 the Dromys' $13,000,000.00 investment and offered the Dromys a restructuring whereby the Dromys

24 would receive $6,500,000.00 immediately, and a $6,500,000.00 note against the Portfolio, to be

25 repaid within 6 months. The Dromys refused. The Dromys frustrated the numerous opportunities to

26 restructure the deal and otherwise mitigate problems that would have ensured a successful transaction

27 for all parties. The Dromys have turned what could have been a successful business transaction into a

28 ///

1  dispute, and initiated litigation. SLP and the Dromys failed to mitigate their alleged loses.

2  Subsequently, SLP named the buyer as a Defendant in a SAC.

3      52. When Oren world not capitulate to Ely Dromys demand that he pay their attorney's fees

4  and testify against the escrow company, SLP named Oren and Sherr, Rasbe and Emmet as

5  Defendants in in a SAC erroneously claiming, among other preposterous allegations, that Oren was

6  required to place 13 million of Oren's own money into escrow and Oren breached his oral agreement

7  in this regard and defrauded the Dromys and SLP. The Dromys fabricated this artificial theory fiction

8  as an extension of their prior attempts at blackmail and extortion aimed at Oren.

9      53. During suit, Ely Dromy, in spontaneous rash sudden statements, uttered to Oren a

10 continuing series of the death threat that Oren initially reported and documented to the Los

11 Angeles County Sheriff's Department and letters between Oren's former attorney, Lee Sacks and

12 Dromys attorney. In the initial response to Lee Sachs' letter, Dromy's attorney did not deny the death

13 threat Ely Dromy made to Oren, he only noted that Ely Dromy would leave Oren alone.

14     54. Ely Dromy did not do so, and the pattern of death threats continued, unabated from early

15 2016 up through February 2018, and included,

16     A Ely Dromys' phone call Oren approximately 1:43- p.m. on October13, 2016 stating, "You

17 made a deal with the devil, if you don't give me the money, I will kill you!" Oren called the Los Hills

18 Sheriff's Department, a sub-division of the Los Angeles County Sheriff's Department.

19     B. A death threat during recess in a deposition of Ely Dromy in which he threatenedOren that

20 some crazy things will happen to him;

21     C. A death threat in the parking area after Oren came out of mediation about a year and half

22 ago which is documented by a letter to Dromys attorneys;

23     D. During another deposition of Ely Dromy in February 2018 where during recess Ely Dromy

24 told Oren again spontaneously. that "he is the devil and Oren made a deal with the devil and that he is

25 going to kill Oren" which was stated in the presence of Oren's attorney, Lee Sacks, Joe Guglielmo's

26 attorney Joel Shackelford, and the court reporter. In his deposition, Lee Sacks confirmed the death

27 threat made by Ely Dromy to Oren. Ely Dromy then attempted to obtain the personal address of Oren

28 and the name and address of the schools of Oren's children.

55. Oren was and is frightened, intimidated and the threats were intended to interfere with his rights to testify truthfully and present evidence that will exonerate the corporate entities, Sherr, Rasbe and Emmet of which he is the sole director, sole officer and sole shareholder.

56. Oren and the corporate entities did nothing to precipitate the failure and collapse of the transaction relative to the interest the respective parties had in the portfolio of 17 hotel properties. In fact, the failure is proximately related to the refinancing failure proximately caused by Ely Dromy's ultimate refusal to provide his personal guarantee to the lender who had tentatively agreed to the refinancing on condition of receiving the personal guarantee of the principals owing the entities who had respective interests in the portfolio of the 17 hotel properties.

57. Ely Dromy represented that he was OK with the fees that the Oren entities received as long as he, Ely Dromy, was receiving his $100,000.00 monthly payment. The fees the Oren entities received were not conditioned on anything that occurred after the close of escrow. Although the Oren entities received consideration from the seller First Capital and the buyer, VCV, which was 4% of the purchase price for Oren's efforts in helping to facilitate the consummation of the purchase and sale of the portfolio of 17 hotel properties, neither Oren nor the entities did anything to facilitate the collapse of the transaction. The collapse of the transaction was facilitated by the refusal of Ely Dromy to simply comply with standard refinancing requirements of providing his personal guarantee and, or, the seller's obligations to pay to Ely Dromy the $100,000.00 per month incident to the seller's guarantee to Ely Dromy. Oren and the corporate entities allege that  Ely Dromy eluded his name from appearing on any documents connected with the transaction  and  Ely Dromy hid his personal financial information in some unrevealed charade.  The Dromys could have demanded that their name appear on the deal documents or asked to modify their status from investor to a buyer, or asked for any changes they wished, and if ntheir requests or demands were not accepted, they could have stopped transferring money to escrow at anytime and stopped the deal. The Dromys, however, elected to proceed. even after the Dromys thought that there was a problem with the deal which Plaintiff's allege may have been why Ely Dromy refused to provide his personal guarantee. Nevertheless, Ely Dromy still elected to stay in the deal and continued to transfer millions of dollars to escrow/

58. Defendants SLP and the Dromys has admitted that:

A. They never executed any written agreement with Oren or Sheer, LLC with respect to their investment in the Hotel Entities or the Georgia hotel properties;

B. Oren nor Sherr, did not agree in writing to pay $6,600,000.00 for the 12.5% interestin the Hotel Entities or the Georgia Hotel Properties;

C. Neither Oren nor Sherr directed them in writing to pay $13,000,000.00 to First Capital;

D. Oren and Sherr did not agree in any writing to ensure that the March 31, 2015 Agreement was completely consistent with the terms of an alleged oral agreement that SLP and the Dromys allege they had with Oren or Sherr;

E. They never objected in writing to Oren or to Sherr about the March 31, 2015 agreement;

F. They paid all the funds through escrow to First Capital required to be paid under the March 31, 2105 agreement and First Capital was aware that they paid all the funds to First Capital required to be paid under the March 31, 2105 agreement;

G. The March 31, 2015 agreement does not require Oren or Sherr to pay  $6,500,000.00 to First Capital and assume any pro-rata share of any non-recourse indebtedness owed by the Hotel Entities or the Georgia Hotel Properties;

H. That Dromy never asked Oren or Sherr, to put in writing that Oren and Sherr, were going to contribute $13,000,000.00 in connection with the transaction;

I. It is unclear from the fabricated oral agreement exactly how much money the Dromys allege Oren was supposed to have invested in the deal pursuant to the alleged oral contract; it is equally unclear how much ownership interest Oren was supposed to receive in exchange. These amounts are unclear because the Dromys have continually uttered differing amounts ranging from $6,500,000.00 to $13,000,000.00 and ownership interests ranging from 12.5% to 50%.

59. Pursuant to their Chapter 7 proceedings, Sherr, Rasbe and Emmet, will file a Notice of Removal of the State Court action. When an action pending in a state court is removed to bankruptcy court (28 USC § 1452), it is litigated as an adversary proceeding. (FRBP 7001(10)) Their right to remove under § 1452(a) is because the causes of action as to which the district court would have

1    jurisdiction under 28 USC  § 1334 (i.e., cases Arelated to the bankruptcy cases). (28 USC  §

2    1452(a)) State claims may be removed to federal court under the general federal removal statute

3    based on federal question (including state law claims that are transnationally related to the federal

4    question claims) (28 USC §1441) provided it is "related to" a bankruptcy case which they are.

<p align="center">**FIRST CLAIM OR CAUSE OF ACTION**</p>

6    (**Violations of the Racketeer Influence and Corrupt Organizations act)**

7    **(by Plaintiffs against Defendants Ely Dromy, David Dromy, Silver Lake Park)**

8        60. Plaintiffs restate and incorporate by reference hereat, the above paragraphs 1 through 59

9    as if fully set forth hereat.

10        61. Ely Dromy violated Rone Oren's rights pursuant to Title 18 USC § 1512(b) by (1)

11    knowingly or corruptly engaging in unlawful conduct toward Oren, threatening Oren with death if

12    Oren did not pay to Ely Dromy an amount Ely Dromy demanded as part of his State Court action,

13    and Eli Dromy's intent was to delay or prevent Oren's testimony part of which is contained in this

14    Verified Adversary Proceeding which demonstrates Ely Dromy's misconduct, failure to mitigate and

15    Ely Dromy's refusal to provide his personal guarantee as being the proximate cause of the loss of the

16    purchase and sale of the portfolio of 17 hotels; and (2) caused Oren:

17        (A) To be intimidated from giving his truthful testimony as noted in this Verified Adversary

18    Proceeding which assists the Court in finding the proximate cause of the failure of the purchase and

19    sale of the portfolio of 17 hotels  and, (B) caused the legal process which initially summoned Rone

20    Oren to initially produce his Answer in the official proceeding to be corrupted and thus evaded;

21        (B) Violated Oren's rights pursuant to Title 18 USC § 1512(d) by intentionally harassing

22    Oren with death threats, the proximate result of which hindered, delayed, and prevented Oren from

23    fully testifying in the official proceedings of Ely Dromy's and SLP's case as Oren has herein testified

24    by virtue of this Verified Adversary Proceeding;

25        (C ) Violated Oren's  rights pursuant to Racketeer Influence Corrupt Organizations Act

26    ("RICO"), in that the actions of issuing continuous death threats, and continuing threatening actions

27    and cover up of a continuous death threat was (1) conduct and Ely Dromy's conduct was for the

28    benefit of his company SLP which was (2) an enterprise and Ely Dromy and SLP engaged in their

1    activity of constant physical threats and covering up the constant and continuing physical threats in

2    an obstruction of justice (3) through a practice pattern; and the activity of violating Title 18 USC §

3    1512(b)-(d) was (4) racketeering activity under 18 USC 1961(1)(b);

4         62. Ely Dromy violated Oren=s rights protected under 42 USC § 1985(2) because

5    professionalism and civility are the means by which a court having jurisdiction over the subject

6    matter asserts its jurisdiction over the party and brings home to all litigants the reasonable process to

7    secure a neutral forum for all people to resolve their differences in a peaceful, non-violent manner.

8         63. Such neutral, civil forum is an indispensable element of due process of law.

9         64. Public policy encourages the free access to the legal system and requires executors to

10   perform their function responsibly, justifying a legal duty of care towards the individual executor.

11        65. Oren was due a judicial process to protect him against the potentially severe

12   consequences which were likely to result if Ely Dromy,  and all cross defendants, and each of them,

13   did not perform their task as prescribed by law, and threatened Oren when he, Oren attempted to

14   perform legal duties for the debtor defendant corporations.

15        66. Public policy required Ely Dormy and all defendants, and each of them to faithfully

16   execute their duties and not interfere in a physically threatening manner with the duties of the

17   director and officer of the debtor defendant corporations.

18        67. The threats from Ely Dromy and all defendants, and each of them were ongoing,

19   continuous, and occurred even after Oren summoned the help of the Los Angeles County Sheriff's

20   Department. And the threats did not cease and desist and as such, were unnecessary, unwarranted and

21   unacceptable un-civil actions which involved more than merely an absence of care, the threats were

22   intentional acts, i.e., conscious wrongdoing, thus, the threatening activity was more than a technical

23   mishap.

24        68. The efficacy of the wrongful life-threatening conduct of death threats is the creation of

25   chaos in the legal community.

26        69. If the wrongful activity is not enjoined, the legal community will not be able to depend on

27   the truthfulness of witnesses.

28   ///

17

70. Public policy requires that it be regarded as serious, with consequences sufficiently adverse to act as deterrence.

71. Ely Dromy took the actions he did take, and made the death threats against Rone Oren he did make for the benefit of SLP, his son, David Dromy, also a principal of SLP, and for all other Defendants to intimidate Oren to capitulate to Ely Dromy's demands as set forth above, which directly impacted the rights of Sherr, Rasbe and Emmet, as Oren is their sole Director and President and these entities actually received the funds Ely Dromy is demanding Oren return to Silver Lake Park. Ely Dromy, and all Defendants, and each of them, have no defense of California=s litigation privilege as Oren's RICO claims are predicated on violations of federal statutes which preempt California's litigation privilege as noted in *Lauter v. Anoufrieva* (C.D. Cal. July 14, 2010) 2010 WL 3504745, *11, *13, citing *Johnson v. JP Morgan Chase Bank dba Chase Manhattan*, 536 F.Supp.2d 1207, 1213 (E.D.Cal.2008) and; *Oei v. North Star Capital Acquisitions, LLC*, 486 F.Supp.2d 1089, 1098 (C.D.Cal.2006)

72. As a proximate result of the actions of Ely Dromy and SLP and David Dromy, Plaintiffs' Oren, Sherr, Rasbe and Emmet have been damaged in an amount according to proof and at a minimum an amount in excess of the minimum amount to invoke the jurisdiction of this court, costs of suit and attorney fees. Furthermore, the actions of Defendants, and each of them, were intentional, deceit, concealing material facts as Defendants specifically intended to deprive Plaintiff of their property, money, legal rights and caused Plaintiffs injury and, the conduct of Defendants, and each of them, was despicable, subjecting Plaintiff Oren to humiliation, mental distress, with a conscious disregard of Plaintiff's rights so as to justify an award of exemplary and punitive damage.

### SECOND CLAIM OR CAUSE OF ACTION

### (Obstruction of Justice under Title 42 U.S.C 1985(2))

**(by Plaintiffs against Defendants Ely Dromy, David Dromy, Silver Lake Park)**

73. Plaintiffs restate and incorporate by reference hereat, the above paragraphs 1 through 72 as if fully set forth hereat.

74. The actions of Ely Dromy, and all defendants, and each of them as noted above were a conspiracy, the purpose of which targeted Oren with intimidation and physical and legal threats so

18

1    Oren,  and all defendants and each of them could make a considerable financial gain by intentionally

2    denying Oren  the equal protection or dignities of such laws.

3         75. Ely Dromy, and all defendants, engaged a series of overt acts described above, to

4    facilitate their conspiracy of "tampering of a witness" through threats and death threats, the practice

5    pattern of which destined Ely Dromy and all defendants, and each of them, to profit financially by

6    personally threatening Oren.

7         76. The first step in the conspiracy occurred when Ely Dromy realized that Oren would not

8    acquiesce to Ely Dromy's  extortion to pay him millions of dollars or Ely Dromy would go to the

9    police. Our system of justice does not allow for the continuing types of threats against party litigants,

10   and the Sheriff's department was summoned to ensure that Ely Dromy would cease and desist from

11   all such threatening activity.

12        77. The scheme of the conspiracy was (1) to continually threaten Oren to cause him to be

13   apprehensive about proceeding to connive a means to ensure that Ely Dromy and his company, Silver

14   Lake Park would coerce money from Oren  (2) threatening to file an action against Oren and when

15   Oren  continued lawfully with his duty as director and officer of the debtor corporations, and

16   undertook an investigation to assemble facts to allow the Court to make a decision on the facts which

17   were uncovered (3) Oren, as director and officer of the debtor corporations was then threatened

18   physically, (4) such physical threat occurring in the presence of others, (5) to intimidate and

19   humiliate Oren to induce him to withdraw from any further participation in the case and to coerce

20   him into a settlement which Oren knew was not lawful.

21        78. Oren is a member of a class who participate in a public forum in the legal process who are

22   protected from witness intimidation, and deprived, directly or indirectly, of the equal protection or

23   equal privileges of the law, when some person engages in activity to interfere with their attempt to

24   provide witness testimony or present documents to a judicial officer to assist the judicial officer in

25   the manner in which Ely Dromy and all defendants, and each of them effected the threatening,

26   intimidating and humiliating activity on Oren as the director and officer and shareholder of the debtor

27   defendant corporations. The conspiratorial conduct of Ely Dromy, and all defendants, and each of

28   them, was propelled by class based invidious discriminatory animus.

79. As a proximate result of the actions of Ely Dromy, and all defendants, and each of them as described above. Oren, Sherr, Rasbe and Emmet are entitled to damages in an amount according to proof and at a minimum an amount in excess of the minimum amount to invoke the jurisdiction of this court for his 42 U.S.C § 1985.2 claim, plus damages for emotional distress, plus punitive damages, costs of suit and attorney fees. Furthermore, the actions of Defendants, and each of them, were intentional, deceit, concealing material facts as Defendants specifically intended to deprive plaintiff of his property, money, legal rights and caused Plaintiff injury and, the conduct of Defendants, and each of them, was despicable, subjecting Plaintiff Oren to humiliation, mental distress, with a conscious disregard of Plaintiff's rights so as to justify an award of exemplary and punitive damage.

## THIRD CLAIM OR CAUSE OF ACTION

### (Civil Rights Violations under Title 42 U.S.C 1985(3))

(by Plaintiffs against all Defendants)

80. Plaintiffs restate and incorporate by reference hereat, the above paragraphs 1 through 79 as if fully set forth hereat.

81. California and the United States created law, including the statutes cited herein to be applied equally. Defendants intentionally denied Plaintiffs the equal protection or dignities of such laws.

82. Defendants actions as noted above were a conspiracy, the purpose of which targeted the Plaintiffs so Defendants, and each of them, could make a considerable financial gain.

83. Defendants engaged a series of overt acts described above, to facilitate their conspiracy, a sinister practice pattern of which destined Defendants to profit financially by misrepresenting the reasons for the ultimate collapse of the business transaction which purchased the portfolio of the 17 hotel properties.

84. The scheme of the conspiracy was (1) to make it appear that the Dromy's and SLP did not read the March 31, 2015 agreement which was given to them by Oren for the buyer, VCV, and the seller, First Capital, and for himself and for Sherr, Rasbe and Emmet, (2) by placing payments into escrow and then claiming subsequently that they had no knowledge of the facts of the March 31,

2015 agreement of which they were expressly given a copy, (3) misrepresent that they had not been
made aware of the payment schedule in the March 31, 2015 agreement, when the Defendants Dromy
and SLP knew, or reasonably should have known, that they received the a full and complete copy of
the March 31, 2015 agreement both personally from Oren and by e-mail from Oren, (4) file an action
against the other members of the transaction except Oren, Sherr, Rasbe and Emmet and have
defendants entities and their principals agree to lift the onus of responsibility from their shoulders by
pointing a fickle finger of fate at Oren, Sherr, Rasbe and Emmet as the only perpetrator, and (5)
engage a campaign of overt physical threats of violence against Oren if he did not capitulate to his
demands and have Sherr, Rasbe and Emmet return all funds that Ely Dromy had placed into escrow,
orally, to consummate the purchase of the 17 hotel portfolio and (6) settle the claims the Dromy's
and SLP had against the seller First Capital and its principal Singal for approximately 6.9 million and
the buyer, VCV and its principal Guiglielmo for 1.9 million with a Stipulation for Entry of Judgment
for violation of fiduciary duty when the Dromy's and SLP made it known that (a) both the seller and
the buyer  and their principals were judgment proof as they had protected their visible assets from
satisfaction of the amount to which they agreed and for which they Stipulated to an Entry of
Judgment, and (b) knowing that it was to Seller First Capital and its principal Singal and buyer VCV
and its principal Guglielmo who authorized the release of funds from escrow to be paid to Sherr,
Rasbe and Emmet, and (c) conspiring that such settlement and Stipulation for Entry of Judgment by
the Seller and the Buyer and its principals would implicate Sherr, Rasbe, Emmet, and Oren, and
erode the meritorious and verifiable defense of Sherr, Rasbe, Emmet and Oren as hereinabove noted.

85. Plaintiffs Sherr, Rasbe and Emmet have suffered and will suffer a substantial financial
injury, and their sole Director and President Oren has suffered emotional distress doing so, all
calculated by the conspiracy scheme.

86. Plaintiffs are members of a class deprived, directly or indirectly, of the equal protection or
equal privileges of the law, when who participate in a public forum in the legal process who are
protected from witness intimidation, and deprived, directly or indirectly, of the equal protection or
equal privileges of the law, when some person engages in activity to interfere with their attempt to
provide witness testimony or present documents to a judicial officer to assist the judicial officer in

the manner in which Ely Dromy and all defendants, and each of them effected the threatening,
intimidating and humiliating activity on Oren as the director and officer and shareholder of the debtor
defendant corporations. The conspiratorial conduct of Ely Dromy, and all defendants, and each of
them, was propelled by class based invidious discriminatory animus.

87. Plaintiff is entitled to damages in the amount according to proof and at a minimum an
amount in excess of the minimum amount to invoke the jurisdiction of this court for his 42 U.S.C §
1985.3 claim, plus damages for emotional distress, plus punitive damages, costs of suit and attorney
fees. Furthermore, the actions of Defendants, and each of them, were intentional, deceit, concealing
material facts as Defendants specifically intended to deprive Plaintiffs of their property, money, legal
rights and caused Plaintiff Oren injury and, the conduct of Defendants, and each of them, was
despicable, subjecting Plaintiff to humiliation, mental distress, with a conscious disregard of
Plaintiff's rights so as to justify an award of exemplary and punitive damage.

### FOURTH CLAIM OR CAUSE OF ACTION

### (Violations of California Business and Professions Code 17200)

### (by Plaintiffs against Defendants Ely Dromy, David Dromy and Silver Lake Park)

88. Plaintiffs restate and incorporate by reference hereat, the above paragraphs 1 through 87
as if fully set forth hereat.

89. California's Business and Professions Code ("B&P") '17200, the Unfair Competition
Law, defines unfair competition to include, any unlawful, unfair or fraudulent business act or
practice. The unlawful practices supporting a 17200 claim are any practices forbidden by law be it
civil or criminal, federal or state, municipal, statutory, regulatory or, court made. In effect Unfair
Competition Law borrows violations of other laws and treats them as unlawful practices
independently actionable under B&P § 17200.

90. Ely Dromy, and all defendants, and each of them, violated Oren's rights by engaging in an
Unlawful Business practice under California Business & Professions Code  § 17200, as they:

A.  Violated Oren's rights pursuant to Title 18 USC § 1512(b) by (1) knowingly or corruptly
engaging in misleading conduct toward Oren with intent to delay or prevent his testimony in the
initial official proceedings in the case; and (2) caused Oren (A) to initially withhold his testimony in

1   the official proceedings as hereinabove stated; and (B) caused Oren to be intimidated in the official

2   proceedings of the Case to which Oren was duty bound to testify by legal process; and,

3        B. Violated Oren's rights pursuant to Title 18 USC 1512(d) by intentionally harassing Oren

4   with death threats, hindering, delaying, and preventing him from fully and completely testifying in

5   the official proceedings of the Case as he has in this Verified Adversary Proceeding Complaint; and,

6        C. Violated Oren's rights pursuant to Racketeer Influence Corrupt Organizations Act

7   ("RICO"), in that the threatening actions of Ely Dormy was (1) conduct; and his law practice was (2)

8   an enterprise; and he engaged in the activity of threatening and harassing in an obstruction of justice

9   (3) through a practice pattern; and the activity of violating Title 18 USC § 1512(b)-(d) which was (4)

10  racketeering activity under 18 USC § 1961(1)(b); and,

11       D. Violated Oren's rights pursuant to Title 42 USC § 1985.2, that is, Ely Dormy intended to

12  deny to Oren the equal protection of the laws, and to injure Oren  emotionally and financially from

13  lawfully enforcing, or attempting to enforce his rights to the equal protection of the laws to be given

14  proper opportunity to fulfill his role as director and officer and shareholder of the debtor defendant

15  corporations in the process of the case which would enable him to proceed to give testimony as a

16  witness and present witnesses and documentation in the Case; and,

17       E. Because the practice pattern of threatening and the trying to cover up their activities with

18  further threats was an obstruction of justice pursuant to Title 18 U.S.C. ' 1503 et. seq. which provides

19  that anyone who "corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct,

20  or impede, the due administration of justice" is guilty of obstruction of justice; and,

21       G. Ely Dromy violated Oren's  rights pursuant to Title 18 USC  § 1621, perjury, by falsely

22  testifying under oath and in his subsequent declarations about material matters, his testimony was

23  false, he knew his testimony was false, and he gave his testimony in his declarations voluntarily and

24  intentionally, and did so to obstruct justice, not merely inaccurately as result of confusion or faulty

25  memory; andd,

26       H. Violated Oren's rights pursuant to Title 18 USC § 1622, subornation of perjury, procuring

27  his son. David Dormy, to commit perjury, and to testify falsely under oath in his deposition and

28  declaration about material matters, his testimony was false, he knew his testimony was false, and he

1  gave his testimony in his declarations voluntarily and intentionally, and did so to obstruct justice, not

2  merely inaccurately as result of confusion or faulty memory.

3       I. Violated the rights of the Plaintiffs pursuant to 42 USC § 1985.3 as described above.

4       91. Oren's § 17200 claims are factually and legally predicated on the violations of federal

5  law prohibiting witness tampering (18 U.S.C. § 1512(b)-(d)), RICO (18 USC § 1961(b)(1),

6  obstruction of justice (18 USC § 1512(b)) civil rights violations (42 USC § 1985.2 and § 1985.3)

7  perjury (18 USC § 1621) and subornation of perjury (18 USC § 1622).

8       92. Ely Dromy, and all Defendants, and each of them, have no defense of California=s

9  litigation privilege as Oren's B&P § 17200 claims are predicated on violations of federal statutes

10  which preempt California's litigation privilege as noted in *Lauter v. Anoufrieva* (C.D. Cal. July 14,

11  2010) 2010 WL 3504745, *11, *13 citing *Johnson v. JP Morgan Chase Bank dba Chase Manhattan*,

12  536 F.Supp.2d 1207, 1213 (E.D.Cal.2008) and; *Oei v. North Star Capital Acquisitions, LLC*, 486

13  F.Supp.2d 1089, 1098 (C.D.Cal.2006).

14       93. Oren is informed, believes and thereon alleges that he is entitled to an injunction against

15  Ely Dormy, David Dromy and SLP, and all Defendants and each of them, forever enjoining their

16  actions filed against Oren, Sherr, Rasbe and Emmet and the claims of the Dromys' and SLP are and

17  were a sham to mask the charade of Ely Dromy and SLP in their inexorable evasive sham of hiding

18  the underlying transaction to purchase a portfolio of 17 hotels for 102 million dollars in an oral

19  agreement in an effort to hide the paper trail of their involvement.

20       94. Oren is subjected to being victimized again and justifiably fearful of an immediate

21  repeated injury by the threats and practices of Ely Dormy and all defendants, and each of them,

22  which violate his Federal and State rights, as Ely Dormy and all defendants, and each of them, have

23  repeatedly engaged in the injurious acts of threatening and the cover up of such in the past, thus there

24  is a sufficient probability that Ely Dormy and all defendants will engage in such threatening activity

25  against Oren in the near future, substantiating Oren's claim for injunctive relief.

26       95. Oren is reasonably threatened with future threatening practices from Ely Dormy and all

27  defendants, and each of them, given Oren's status as a director and officer of debtor defendant

28  corporations who Ely Dromy alleges stole money from him, and his ongoing legal challenges to Ely

Dormy's activity to threaten him because he tried to do his job as director and officer of the debtor defendant corporations as Ely Dromy's repeated harmful acts which he suffered Oren was and is not outside the control of Ely Dromy and all defendants, and each of them, and it depends solely on whether Ely Dromy and all defendants and each of them will continue the threats of physical violence against Oren.

96. Oren is currently involved in litigation efforts and will be subject to additional threats and has a reasonable prospect of being subjected to additional litigation from Ely Dromy and all defendants, thus the future harm to Oren by Ely Dromy and all defendants, and each of them is probable and more than speculative.

97. Ely Dromy and all defendants, and each of them, violated Oren's rights by engaging in an Unfair Business practice under California Business & Professions Code § 17200, as Oren's emotional distress injury from the threats proximately causing such intimidation and humiliation is substantial, his emotional distress injury is not outweighed by any countervailing benefits to consumers or competition, and his emotional distress injuries could not reasonably have been avoided under all the foregoing circumstances.

98. Oren is not required to, but may seek class certification under California Business and Professions Code § 17200, for a class of people in California and throughout the United States similarly situated to Oren who have also suffered from such intimidating tactics while shouldering their duties in the legal process from the same or similar scheme as Oren has suffered after discovery uncovers sufficient facts regarding the issues of (a) numerosity, (b) the existence and predominance of common questions of law and fact, (c) typicality, (d) adequacy, and (e) superiority.

99. As a proximate result, Plaintiffs are entitled to a permanent injunction against the Dromys and SLP, and all defendants, and each of them, forever enjoining the actions as a result of the sale of the portfolio of 17 hotels, and restitution in the amount paid to defend against the practice pattern of threatening and the cover up of such, costs and attorney fees under California Civil Code 1021.5.

## FIFTH CLAIM OR CAUSE OF ACTION

### (Declaratory Relief)

### (by Plaintiffs against all Defendants)

100. Plaintiffs restate and incorporate by reference hereat, the above paragraphs 1 through 99 as if fully set forth hereat.

101.  An actual controversy now exists between Plaintiff s and Defendants Ely Dromy, David Dromy and SLP relating to the legal rights and duties of the respective parties arising out of the relationship between them and the purchase and sale of the portfolio of 17 Hotel Properties.

102. Plaintiffs contend that they did not, as Defendants Ely Dromy, David Dromy and SLP allege, defraud Ely Dromy, David Dromy and SLP, did not breach an allege oral contract, that there was never an oral agreement between Plaintiffs and Ely Dromy, David Dromy and SLP, that they did not owe any fiduciary duties to Ely Dromy, David Dromy and SLP and that if there were any fiduciary duties that they did owe, they honored those fiduciary duties by making full and complete disclosures, they did not make any intentional misrepresentations or negligent misrepresentations in connection with the purchase and sale of the portfolio of 17 hotel properties, that they properly disclosed the March 31, 2015 agreement to Ely Dromy, David Dromy and SLP, that Ely Dromy was responsible for the eventual loss of the portfolio of 17 hotel properties when he refused to provide his personal guarantee to the lender who had provisionally agreed to provide the refinancing of the nine Georgia hotel properties, and that Plaintiffs' are not liable to Ely Dromy, David Dromy or SLP in any amount, and if any amount is alleged to be owed by Plaintiffs to Ely Dromy, David Dromy or SLP, said amount must be completely off set by the amount that Plaintiff Oren and the entities are entitled to receive as a result of their RICO violations against Oren and as a result of their violating Oren's rights in accordance with 42 USC § 1985.2 and the rights of Sherr, Rasbe, Emmet and Oren in accordance with 42 USC 1985.3.

103. Defendants the Dromys' and SLP deny Plaintiff's contentions. and maintain that the purchase of the 17 hotel properties and the release of funds from escrow by the buyer and seller  to the Plaintiffs defrauded them, and breached an oral agreement and fiduciary duties owed to them, and made intentional and negligent misrepresentations, and that no set off for any amount should occur.

104. An actual controversy now exists between Plaintiff s and Defendants Joseph Guglielmo and VCV relating to the legal rights and duties of the respective parties arising out of the relationship between them and the purchase and sale of the portfolio of 17 Hotel Properties.

105. Plaintiffs' contend that they did not, as Guglielmo and VCV now allege, execute a written indemnity agreement, agreeing to indemnify Guglielmo and VCV in the event that any litigation arose with respect to the purchase and sale of the portfolio of 17 hotel properties, and that the alleged indemnity agreement is a forgery, is not signed or dated by Oren or Sherr, Rasbe or Emmet, and the alleged indemnity agreement only bears the initials of RO for Oren and Sherr, Rasbe and Emmet, and under the totality of circumstances, Guglielmo and VCV have made an adopted admission that there is no indemnity agreement because after Guglielmo and VCV were sued by SLP, they, Guglielmo and VCV, never made a demand on Oren or Sherr, Rasbe or Emmet to indemnify them, to defend them and they did not file an cross complaint against them, answered deposition questions about the indemnity agreement in an evasive and equivocal manner, and never brought the issue to their attention except after Guglielmo and VCV entered into a settlement agreement with SLP which requires them to make a 1.9 million dollar payment to SLP within 270 days and now Guglielmo and VCV allege the indemnity agreement which only bears the initials RO.

105. Defendants Guglielmo and VCV deny Plaintiffs' contentions and maintain the indemnity agreement is valid and enforceable and deny that under the totality of circumstances, they made an adopted admission that there is no indemnity agreement.

106. Plaintiff desires a judicial determination and declaration of the respective rights, duties and obligations of Plaintiff and all Defendants, a declaration that Plaintiff's ae not liable to the Defendants Ely Dromy, David Dromy or SLP for any reason under the purchase and sale of the portfolio of 17 hotel properties, and if Plaintiff are liable to the Dromy's and SLP for any reason as a result of the purchase and sale of the portfolio of 17 hotel properties, such amount is fully and completely off set by the amount the Dromys' and SLP are found to be liable to the Plaintiff for their violations against the Plaintiffs as described above, and that Plaintiffs do not have an indemnity agreement requiring them to indemnify Guglielmo or VCV, as Plaintiff's remedy at law is not adequate and that Defendants provide all Plaintiff's attorney fees and costs.

## SIXCTH CLAIM OR CAUSE OF ACTION

### (Negligence)

### (by Plaintiff Sherr, Inc. against Ely Dromy)

107. Plaintiffs restate and incorporate by reference hereat, the above paragraphs 1 through 59 as if fully set forth hereat.

108. Sherr. Inc., had a 12.5% interest in the LLC which was to be the legal owner of the portfolio of 17 hotel properties and SLP had a 50% interest in the LLC owing the portfolio of 17 hotel properties.

109. In accordance with Ely Dromy being the alter ego of SLP and with SLP having a 50% ownership interest in the LLC which was to be the owner of the portfolio of the 17 hotel properties, he, Ely Dromy, owed a duty to Sherr, Inc., to ensure that the lender who was to refinance the nine Georgia hotels, had the personal guarantee of Ely Dromy.

110. Ely Dromy refused to provide the personal guarantee the lender required to complete the refinancing of the nine Georgia hotel properties.

111. Ely Dromy breached his duty to Sherr, Inc. whe he, Ely Dromy did not provide his personal guarantee to the lender.

112. As a proximate result of the breach of duty by Ely Dromy to provide his personal guarantee to the lender to complete the refinancing of the nine Georgia hotel properties, Sherr, Inc. has suffered a massive financial injury, and has been damaged in an amount according to proof, but in excess of seven (7) million dollars.

**WHEREFORE**, Debtor and Plaintiff Sherr, Rasbe, Emmitt and Oren rays for judgment against all Defendants, and each of them as follows:

<u>**On the First, Second and Third Claims or Causes of Action**</u>:

1. For compensatory damages in the amount according to proof;

2. For punitive damages in an amount according to proof;

3. For costs of suit and attorney fees;

4. For such other and further relief as the Court may deem just and proper.

<u>**On the Fourth Claim or Cause of Action**</u>

1. For an injunction in a form to be submitted to the Court that Defendants Ely and David Dromy and SLP and their successors and assigns are permanently enjoined from proceeding in any action against the Plaintiff for any claim as a result of the purchase and sale of the portfolio of 19 hotel properties, or the release of funds from escrow to Sherr, Inc, Rasbe, Inc, or Emmet, Inc.;

1    2. For costs of suit and For attorney fees under the Cal, Civ. Cd. 1021.5;

2    3. For such other and further relief as the Court may deem just and proper.

3    **On the Fifth Claim or Cause of Action**

4    1. For a declaration that Plaintiffs are not liable to Ely Dromy, David Dromy of SLP or any of

5    their successors and assigns for any claims or causes of action as a result of the purchase and sale of

6    the portfolio of 17 hotel properties;

7    2. For a declaration that Plaintiffs are not required to provide back any payments made to

8    Sherr, Rasbe, and Emmet from funds disbursed from escrow to them;

9    3. For a declaration that if Plaintiff's are found liable to Ely Dromy, David Dromy or SLP,

10    said amount will be completely off set by the amount Ely Dromy will be declared to owe to Oren and

11    the entities as a result of the RICO violations against Oren and as a result of their violating Oren's

12    rights in accordance with 42 USC 1985.2 and 1985.3;

13    4. For a declaration that Plaintiffs never signed or initialed an indemnity agreement agreeing

14    to indemnify Joseph Guglielmo or VCV or their successors and assigns and that Plaintiffs are not

15    required to indemnify Joseph Guglielmo or VCV for any reason as a result of the purchase and sake

16    of the portfolio of 17 hotel properties.

17    5. For costs of suit;

18    6. For such other and further relief as the Court may deem just and proper.

19    **On the Sixth Claim or Cause of Action**

20    1. For damages in an amount according to proof but in excess of 7 million dollars;

21    2. For costs of suit;

22    3. For such other and further relief as the Court may deem just and proper.

23    Dated: July 12 2019                    Respectfully filed by:

24                                          `/s/ Khachik Akhkahsian`

25                                        Law Offices of Khachik Akhkash
                                          by Khachik Akhkahshian, Esq.

26                                          Attorney for Debtor and Debtor/Plaintiffs
                                          Sherr, LLC, Rasbe, Inc. Emmet Inc. And

27                                            Rone Oren

28

1                                        VERIFICATION

2          I, Rone Oren, declare that I have read the foregoing Verified Adversary Proceeding

3   Complaint, and know the contents therein.

4          I am a Director and the President of Sherr, LLC, Rasbe, Inc. And Emmet, Inc, in this action

5   and I make this verification for that reason.

6          I have read the foregoing document described as a Verified Adversary Proceeding Complaint

7   for 1. Violations of the Racketeer Influence and Corrupt Organizations Act,  2. Obstruction of Justice

8   under Title 42 USC  § 1985(2, 3. Civil Conspiracy under Title  42 U.S.C  § 1985(3), 4.  Violators of

9   California='s Business and Professions Code  § 17200, and  5. Declaratory Relief and know its

10  contents. The matters stated in it are true of my own knowledge, except as to those matters which are

11  stated on information and belief, and as to those matters, I believe them to be true.

12  I declare under penalty of perjury, under the laws of the State of California, and under the laws of the

13  United states of America, that the foregoing is true and correct.

14  Dated: July 12, 2019

15                                                                    Rone Oren

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

                                            30

## STATUS CONFERENCE PROCEDURES
## FOR THE HON. MARTIN R. BARASH

The Court holds status conferences in all adversary proceedings and in chapter 11 cases. An initial status conference in adversary proceedings will be set for a date that is approximately 60 days after commencement of the proceeding. An initial status conference in chapter 11 cases will be set for a date that is approximately 30-40 days after the case is filed.

The trial counsel for each of the parties must appear at the initial status conference in adversary proceedings. The debtor, counsel to the debtor, and counsel to any creditors committee or equity committee appointed in the case must appear in person at the initial chapter 11 status conference. Unless otherwise ordered by the Court, parties and counsel may attend subsequent status conferences telephonically in accordance with Judge Barash's telephonic appearance procedures.[1]

A copy of these instructions must be attached to every complaint served in an adversary proceeding. The party serving such complaint must attach as Exhibit A hereto a copy of Local Bankruptcy Rules ("LBR") Form F 7016-1.STATUS.REPORT. The proof of service for the complaint must expressly indicate that a copy of these instructions was served with the complaint.

## I.    STATUS REPORTS: ADVERSARY PROCEEDINGS

A thorough, written status report, filed fourteen days in advance, is required before **every initial or continued** adversary proceeding status conference.

For adversary proceeding status conferences, the status report must be a joint status report in a form substantially similar to LBR Form F 7016-1.STATUS.REPORT. This form is available on the Court's website. Failure to file a joint status report may result in the imposition of monetary sanctions or the status conference being continued and parties being ordered to redo the status report to conform to the Local Bankruptcy Rule Form.

Pursuant to LBR 7016-1(a)(3), if a defendant has not responded to the complaint or fails to cooperate in the preparation of a joint status report, the plaintiff is required to file a unilateral status report not less than seven days before the date scheduled for the status conference. This unilateral status report must contain the information in Sections A–E of LBR F 7016-1.STATUS.REPORT. The unilateral status report shall include a declaration setting forth the attempts made by the plaintiff to contact or obtain the cooperation of the defendant in the preparation of a joint status report.

---

[1] These procedures available on the Court's website, www.cacb.uscourts.gov, by clicking on the "Judges" menu, selecting "Our Judges," selecting Hon. Martin R. Barash, and thereafter selecting the "Instructions/ Procedures" tab.

## A. Limited Exceptions Where Status Report Not Required.

A status report (either joint or unilateral) is not required *only* in the following limited circumstances:

1. The matter is an adversary proceeding and, prior to the date scheduled for the status conference, the Court has entered an order approving a stipulation that resolves all issues raised by the adversary proceeding and provides either for dismissal of the action in its entirety or the entry of judgment in the action;

2. Prior to the date scheduled for the status conference, the Court has entered an order approving a stipulation continuing the status conference to a later date (a written status report must be filed not less than fourteen days in advance of the continued status conference date); or

3. The Court has expressly relieved the parties of the obligation to file a written status report.

**Unless one of the three exceptions outlined above applies, a status report must be filed in a timely manner. Parties that fail to do so will be subject to a minimum sanction of $150 or such other sanctions as may be warranted under the circumstances or allowed under LBR 7016-1(f).**

**Failure to appear for a status conference in an adversary proceeding may also result in a minimum sanction of $250, dismissal of the adversary proceeding for failure to prosecute, or such other sanctions as may be warranted under the circumstances or allowed under LBR 7016-1(f).**

## B. OTHER PROCEDURAL MATTERS RE: ADVERSARY PROCEEDINGS

### 1. Default

If a response to the complaint is not timely filed, the plaintiff should file a request for entry of default by the clerk. The plaintiff also may request entry of a default judgment by filing and serving (if necessary) an appropriate motion. *See* Fed. R. Bankr. P. 7055 and LBR 9021-1(d); LBR 7055-1. Upon the filing of such a motion, the plaintiff shall concurrently lodge a proposed form of default judgment.

### 2. Authority to Enter Final Judgment

Any party contending that the Court cannot enter a final judgment or order in an adversary proceeding must file and serve a memorandum of points and authorities and evidence in support of its position no less than fourteen days before the initial status conference. **Failure to timely file and serve such memorandum and evidence in support thereof will be deemed consent to entry by the Court of a final judgment or order in the Adversary Proceeding.**

Any responsive memorandum and evidence in support of the Court's authority to enter a final judgment or order in an adversary proceeding must be filed at least seven days before the initial status conference.

### 3.  Jury Trial

Any party claiming a right to trial by jury must make a timely demand as set forth in LBR 9015-2.  Any party asserting a right to a jury trial must file and serve a memorandum of points and authorities and evidence in support of its position no less than fourteen days before the initial status conference. Any response must be filed at least seven days before the initial status conference.  **If a party does not file and serve its papers in a timely manner, that failure may be deemed consent to whatever determination the Court makes.**

### 4.  Scheduling Order.

Unless otherwise ordered by the Court, within seven days after the initial status conference, the plaintiff must lodge a scheduling order consistent with the Court's determinations at that status conference.

## II.  STATUS REPORTS: CHAPTER 11 CASES

A thorough, written status report, filed fourteen days in advance, is required before **every initial or continued** chapter 11 status conference, unless the Court has expressly relieved the Debtor of the obligation to file a written status report. Failure to do so may result in sanctions including dismissal, conversion, or the appointment of a trustee.  Unless otherwise ordered by the Court, each chapter 11 status report must contain the following:[2]

A.  A brief description of the Debtor's business and operations, if any, and the principal assets and liabilities of the estate.

B.  Brief answers to the following questions:

  1.  What precipitated the filing of this case?

  2.  What does the Debtor hope to accomplish in this case?

  3.  What are the principal business and financial problems facing the Debtor and how does the Debtor intend to address these problems?

  4.  What are the main legal disputes facing the Debtor and likely to be encountered during this case, and how does the Debtor recommend that these disputes be resolved?

  5.  What is the Debtor's estimate regarding timing for confirmation of a plan?

  6.  Is the Debtor a "health care business" as defined in 11 U.S.C. § 101(27A)?

  7.  Is the Debtor a small business debtor as defined in 11 U.S.C. § 101(51D)?

---

[2] Subsequent chapter 11 status reports should be sure to highlight changes and developments since the previous chapter 11 status report.

8. Is this case a single asset real estate case as contemplated in 11 U.S.C. §101(51B)?

9. Has the Debtor complied with all of its duties under 11 U.S.C. §§ 521, 1106, 1107, F.R.B.P. 1007 and all applicable guidelines of the Office of the United States Trustee?

10. Do any parties claim an interest in cash collateral of the Debtor?  Is the Debtor using cash that any party claims as its cash collateral, and if so, on what date did the Debtor obtain an order authorizing the use of such cash or the consent of the party?

C. The identity of all professionals retained or to be retained by the estate, the dates on which applications for the employment of such professionals were filed or submitted to the United States Trustee, the dates on which orders were entered regarding such applications (if any), and a general description of the services to be rendered by each such professional.  The initial status report should include an estimate of the expected amount of compensation for each professional.  Subsequent status reports should provide estimates of the amounts actually incurred, as well as updated estimates of the additional fees and expenses anticipated.

D. In operating cases, evidence regarding projected income, expenses, and cash flow.  In the initial status report, this should cover the first six months of the case and contain a comparison to actual results for the 12 months preceding the filing of the case.  In subsequent reports, this should show actual performance during the case, a comparison to the Debtor's postpetition budget, and a projection of six months going forward.

E. In the initial status report, proposed deadlines for the filing of claims and objections to claims.  In subsequent reports, the status of efforts to resolve and/or object to claims.

F. A discussion of the unexpired leases and executory contracts to which the Debtor is a party, including the Debtor's intentions, a proposed timetable for addressing such leases and contracts, and the status of those efforts.

G. In the initial status report, whether the Debtor anticipates the sale of any estate assets by motion or in connection with a plan.  In subsequent reports, the status of those efforts.

H. In the initial status report, a proposed deadline for the filing of a disclosure statement and plan, as well as a description any progress made towards developing and/or negotiating a plan.  In subsequent reports, the status of those efforts.

EXHIBIT A


(The plaintiff shall attach a copy of Local Rule Form
F 7016-1.STATUS.REPORT here)

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| ☐ *Individual appearing without attorney*<br>☐ *Attorney for:* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -  \*\*SELECT DIVISION\*\***

| In re: | |
|---|---|
| | CASE NO.: |
| | ADVERSARY NO.: |
| | CHAPTER: |
| Debtor(s). | |

| | **JOINT STATUS REPORT**<br>**[LBR 7016-1(a)(2)]** |
|---|---|
| Plaintiff(s). | |
| vs. | DATE:<br>TIME:<br>COURTROOM:<br>ADDRESS: |
| Defendant(s). | |

The parties submit the following JOINT STATUS REPORT in accordance with LBR 7016-1(a)(2):

## A. <u>PLEADINGS/SERVICE</u>:

1. Have all parties been served with the complaint/counterclaim/cross-claim, etc. (Claims Documents)?          ☐ Yes    ☐ No

2. Have all parties filed and served answers to the Claims Documents?          ☐ Yes    ☐ No

3. Have all motions addressed to the Claims Documents been resolved?          ☐ Yes    ☐ No

4. Have counsel met and conferred in compliance with LBR 7026-1?          ☐ Yes    ☐ No

F 7016-1.STATUS REPORT

5.  If your answer to any of the four preceding questions is anything <u>other</u> than an unqualified "YES," please explain below (*or on attached page*):

**B.  <u>READINESS FOR TRIAL</u>:**

1.  When will you be ready for trial in this case?
        <u>Plaintiff</u>                                    <u>Defendant</u>

2.  If your answer to the above is more than 4 months after the summons issued in this case, give reasons for further delay.
        <u>Plaintiff</u>                                    <u>Defendant</u>

3.  When do you expect to complete <u>your</u> discovery efforts?
        <u>Plaintiff</u>                                    <u>Defendant</u>

4.  What additional discovery do you require to prepare for trial?
        <u>Plaintiff</u>                                    <u>Defendant</u>

**C.  <u>TRIAL TIME</u>:**

1.  What is your estimate of the time required to present <u>your side of the case</u> at trial (*including rebuttal stage if applicable*)?
        <u>Plaintiff</u>                                    <u>Defendant</u>

2.  How many witnesses do you intend to call at trial (*including opposing parties*)?
        <u>Plaintiff</u>                                    <u>Defendant</u>

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2015                                    Page 9                              F 7016-1.STATUS.REPORT

3.  How many exhibits do you anticipate using at trial?

            <u>Plaintiff</u>                           <u>Defendant</u>

**D.  PRETRIAL CONFERENCE:**

A pretrial conference is usually conducted between a week to a month before trial, at which time a pretrial order will be signed by the court.  [See LBR 7016-1.]  If you believe that a pre-trial conference is not necessary or appropriate in this case, please so note below, stating your reasons:

<u>Plaintiff</u>                               <u>Defendant</u>

Pretrial conference ☐ is ☐ is not  requested     Pretrial conference ☐ is ☐ is not  requested
Reasons:                            Reasons:

<u>Plaintiff</u>                               <u>Defendant</u>

Pretrial conference should be set <u>after</u>:     Pretrial conference should be set <u>after</u>:

(*date*) _____                (*date*) _____

**E.  SETTLEMENT:**

1.  What is the status of settlement efforts?

2.  Has this dispute been formally mediated?     ☐ Yes    ☐ No
    If so, when?

3.  Do you want this matter sent to mediation at this time?

          <u>Plaintiff</u>                             <u>Defendant</u>

          ☐ Yes  ☐ No                    ☐ Yes  ☐ No

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

F 7016-1 STATUS REPORT

**F.  FINAL JUDGMENT/ORDER:**

Any party who contests the bankruptcy court's authority to enter a final judgment and/or order in this adversary proceeding must raise its objection below.  Failure to select either box below may be deemed consent.

<table>
<tr><td>Plaintiff</td><td>Defendant</td></tr>
<tr><td>☐ I do consent</td><td>☐ I do consent</td></tr>
<tr><td>☐ I do not consent</td><td>☐ I do not consent</td></tr>
<tr><td>to the bankruptcy court's entry of a final judgment and/or order in this adversary proceeding.</td><td>to the bankruptcy court's entry of a final judgment and/or order in this adversary proceeding.</td></tr>
</table>

**G.   ADDITIONAL COMMENTS/RECOMMENDATIONS RE TRIAL:** (*Use additional page if necessary*)

Respectfully submitted,

Date: _____                                   Date: _____

_____          _____
Printed name of law firm                                Printed name of law firm

_____          _____
Signature                                                    Signature

_____          _____
Printed name                                              Printed name

Attorney for: _____          Attorney for: _____

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document entitled: **JOINT STATUS REPORT [LBR 7016-1(a)(2)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____  _____  _____
*Date*                *Printed Name*                                   *Signature*

F 7016-1 STATUS REPORT

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
 468 N. Camden Drive, Suite 200, Beverly Hills, California 90210


A true and correct copy of the foregoing document entitled (*specify*): ___Summons, Adversary Complaint, Notice of Status____
 Conference, Status Conference Instructions, Joint status Conference Report, Form 7016_____
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
 ___07/15/2019_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:
 Jerry Namba (TR)
 jnmbaepiq@earthlink.net,jnamba@ecf.epiqsystems.com;jnamba@iq7technology.com United States Trustee (ND)
 ustpregion16.nd.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) ____07/15/2019_____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.
 Martin R. Barash,United States Bankruptcy Court
 Central District of California
 21041 Burbank Boulevard, Suite 342 / Courtroom 303
 Woodland Hills, CA 91367

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/15/2019 | Michael N. Sofris | /s/ Michael N. Sofris |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**<u>Service List</u>**

**<u>By United States Mail</u>**

**Ely Dromy**
**9300 Wilshire Blvd #420**
**Beverly Hills, California 90212**

**David Dromy**
**9300 Wilshire Blvd #420**
**Beverly Hills, California 90212**

**Silverlake Park, LLC**
**c/o MARC COHEN ESQ. , Agent for Service of Process**
**541 S. SPRING ST., SUITE 1208**
**LOS ANGELES CA 90013**

**Joe Guglielmo**
**5320 Lubao Ave.**
**Woodland Hills, Ca 91364**

**VC Visions, LLC**
**c/o Harvard Business Services, Inc., Agent for Service of Process**
**16192 Coastal Hwy**
**Lewes, Sussex**
**DE  19958**